Argued January 29; affirmed April 23; rehearing granted July 2, 1929; reversed on rehearing March 18; second petition for rehearing denied September 9; motion to affirm denied September 16, 1930

## *LAMM *v*. SILVER FALLS TIMBER CO.
### (277 P. 91, 286 P. 527, 291 P. 375)

* On appeal to the United States Supreme Court.

*Omar C. Spencer* of Portland (Carey & Kerr and Omar C. Spencer, all of Portland, on the brief) for appellant.

*Arthur I. Moulton* of Portland (Lord & Moulton of Portland, on the brief) for respondent.

*Miles H. McKey,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for State Industrial Accident Commission.

BROWN, J. The plaintiff's testimony indicates that at the time of the injury he was 44 years of age, resided in Silverton, and was in good health; that after reaching the age of 17 or 18 years, he had spent his life as a workman in the woods; that he had done "logging, slung hook, attended camp, and chased, set choker; done practically all of the work that has to be done in woods"; that he was getting $7.50 the last time he worked in logging, and $5.50 when he was chasing. He testified that he had worked for the defendant company at its camp hereinabove described for 20 or 24 months. Asked to describe the road from Silverton to the camp he testified that there was a good road from Silverton to Silver Creek falls, but that from Silver

Creek falls on to camp, a distance of 10 or 12 miles, the only way of ingress and egress consisted of the Silver Falls logging railroad and a trail. He testified that in his recent employment by the company he was in charge of the rigging crew, and that, when working at that particular task, his day's work began when he reached the donkey, "when the whistle blows at the donkey"; that he worked eight hours a day and was paid by the hour; that he lived in one of the bunk houses at the camp, paid rent therefor, ate at the cook house and paid for his meals; that, during the time they were moving camp, "they hauled us backwards and forwards over the road." His undisputed testimony shows that from the time they finished work at night until the next morning's work began they were not subject to the orders of any person, and that in the interim nobody undertook to tell them what to do. With reference to leaving the camp a few days before he got hurt, he testified:

"Q. What arrangement, if any, did you then make with the company as to when you were to resume work or continue? A. Not any.

"Q. Did you talk with any one about it? A. No.

"Q. Did you speak to your foreman? A. I told him I was on vacation.

"Q. How did your vacation commence, or what kind of an arrangement was it? A. The hunting season was on then and he told us if we would stay on a while while the rest of the crew laid off he would give us a vacation. And Friday morning he told me that I could lay off.

"Q. Where was that he told you that? A. At the camp.

        *         *         *         *         *

"Q. How long did he tell you that you could lay off? A. I don't remember whether he gave us any particular time to lay off. We stayed 9 or 10 or 11 days."

He testified that during the period of his lay-off he was answerable to nobody for his movements, and that

he received no pay for the time he was absent from the camp; that he came to Silverton intending to go hunting; that about 11:30 a. m. on November 9 he and five others went to defendant's logging train for the purpose of returning to the logging camp in the mountains; that he got onto one of the cars, and, after the train had moved some 1,500 feet at a speed of 15 or 20 miles an hour, it stopped with a sudden jar, with the result that plaintiff was thrown over the corner of the car on which he was riding, onto the rail, receiving a cut upon his head and being knocked unconscious, and his left arm being so crushed that it was necessary to amputate the same between the elbow and the shoulder. Concerning the injury he further testified:

"My back was hurt, and my neck nearly broken in two from my falling in the rocks. * * * I didn't get any sleep for days and months afterwards. It still hurts me yet."

He testified that the wound which resulted from the amputation had not entirely healed at the time of the trial.

Robert Quail, a former train man, and one of the party that boarded the train with plaintiff at the time of the accident, testified that when they reached the station where the train pulled out upon that occasion plaintiff asked where the caboose was, and that Ryan, an agent of the company, said he didn't know; that the train whistled twice, and, when they asked Ryan if it was leaving, Ryan said he didn't know whether it was or not but "you had better get on if you are going up." He testified that they then got onto the train which started out at pretty fair speed; that in a very short time it suddenly stopped and "I reached down and pulled the air to keep them (the cars) from running

over him or they would have run over his head. I pulled the air on the cars so the cars couldn't be moved. As far as a brakeman—I never saw a brakeman around there. He was around the engine somewhere, I guess.''

The Oregon Workmen's Compensation Law provides for compensation for accidental personal injuries arising out of and in the course of the workman's employment. So, in reaching a determination of this case, the meaning of the phrase ''arising out of and in the course of'' becomes an important factor. In an attempt to make clear its meaning and its correct application to any given case, leading text writers have devoted much space to its consideration. Likewise many cases are laid down in the reports of this and other states growing out of this much-litigated subject.

As to the interpretation to be placed upon the Workmen's Compensation Acts, 2 Schneider, Workmen's Compensation Law, § 576, says:

''The Workmen's Compensation Acts should be liberally construed so as to attain the accomplishment of their beneficent purposes. * * * And doubts respecting rights to compensation should be resolved in favor of the employee or his dependents.''

See, also, notes under this section.

As indicated by our court in *Farrin v. State Industrial Accident Commission*, 104, Or. 471 (205 P. 984), the same doctrine has been declared by the Supreme Court of Indiana. See the case of *In re Duncan*, 73 Ind. App. 270 (127 N. E. 289), where it is written:

''The Workmen's Compensation Act sought the correction of recognized errors and abuses by introducing new regulations for the advancement of the public welfare. Being remedial in character, it should be construed with regard to former laws and the defects or evils to be corrected and the remedy provided. It should

be liberally construed to the end that the purpose of the Legislature, by suppressing the mischiefs and advancing the remedy, be promoted, even to the inclusion of cases within the reason although outside the letter of the statute. (36 Cyc. 1175.)"

To like effect, see *Stark v. State Industrial Accident Commission,* 103 Or. 80 (204 P. 151); *Dondeneau v. State Industrial Accident Commission,* 119 Or. 357 (249 P. 820, 50 A. L. R. 1129).

On the same question the editors of Ruling Case Law thus state their view:

"The language of the statute is to be construed literally, if there is no reason why it should not be so interpreted. The act means just what it says, and in many respects its language is so plain as to leave no room for construction. In such case the court should not read into the enactment words that are not found therein either by express inclusion or by fair implication. The court may look to consequences, but only where there is room for construction by reason of ambiguous language being used, and where a literal construction would lead to some absurd result." (28 R. C. L., § 52, Workmen's Compensation Acts.)

That the language, "personal injury by accident arising out of and in the course of the employment," is the phraseology of the English act, see 28 R. C. L., § 78, Workmen's Compensation Acts.

It is asserted both in the brief and argument that the common law has suffered many changes by reason of the Workmen's Compensation Act. There is no difficulty in this fact. The practical changes in the common law affected by the enactment of the Workmen's Compensation Act are discussed in 28 R. C. L., Workmen's Compensation Act, § 79; and, at section 92, the editors state that in determining as to whether the relationship of master and servant exists, and whether

the personal injury arose out of and in the course of employment, the courts resort to the old rules respecting the time and place of the accident.

The annotator of a note appearing in 20 A. L. R. at page 319, makes the following statement which we deem particularly worthy of notice in a study of cases of this character:

"As a general rule the phrase 'out of and in the course of the employment' embraces only those accidents which happen to an employee while he is engaged in the discharge of some function or duty which he is authorized to undertake, and which is calculated to further, directly or indirectly, the master's business."

■ To bring a case within the protection of the Workmen's Compensation Act, the employee must show, as he was required to establish under the common law, that he was, at the time of the injury, engaged in the employer's business, or in furthering that business, and that he was not doing something for his own benefit or accommodation. See note, L. R. A. 1916A, 48.

In the case of *Cudahy Packing Co. v. Parramore et al.*, 263 U. S. 418 (44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532), the court said:

"Workmen's compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of the wages and the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured. * * * No exact formula can be laid down which will automatically solve every case."

This question was before the Michigan Supreme Court in the case of *Gertrude Sichterman v. Kent Stor-*

*age Co. et al.* 217 Mich 364 (186 N. W. 498, 20 A. L. R. 309); and, in rendering the opinion, Mr. Chief Justice Fellows, speaking for the court, wrote:

"This state, like many of our sister states, has followed the English act in providing that compensation shall be paid in industrial accidents where the accident arises out of and in the course of the employment. The English courts and the courts of this country with uniformity have agreed that both requirements must be met to justify an award. Both requirements are indicative of the underlying thought that compensation is to be awarded when and where the accident occurs in the service of the master and by reason thereof."

A leading case defining the term "arising out of and in the course of his employment" is *McNicol's Case,* 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A, 306). In that case the Supreme Court of Massachusetts, in considering the question as to when a workman is justified in receiving compensation for a personal injury, said:

"In order that compensation may be due, the injury must both arise out of and also be received in the course of the employment. Neither alone is enough. It is not easy * * * to give a comprehensive definition of these words. * * * An injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment when there is * * * a causal connection between the conditions under which the work is required to be performed and the resulting injury. * * * If the injury can be seen * * * to have been contemplated by a reasonable person familiar with the whole situation, * * * then it arises 'out of' the employment. * * * The causative danger must be peculiar to the work, and not common to the neighborhood. * * * It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

See, also, 28 R. C. L., Workmen's Compensation Acts, § 89.

The case of *Brady v. Oregon Lbr. Co.,* 117 Or. 188 (243 P. 96, 45 A. L. R. 812), 118 Or. 15 (245 P. 732, 45 A. L. R. 821), contains valuable citations defining the phrases ''in the scope of his employment'' and ''arising out of and in the course of his employment.'' In that case we held that, before any action could be success-fully maintained in the courts under the Employers' Liability Act, the plaintiff was required to allege and prove that he was engaged in the scope of his employ-ment for his employer at the time of the alleged acci-dent; and, in opinion on petition for rehearing, 118 Or. 15 (245 P. 732, 45 A. L. R. 821), we quoted the following from 1 Dresser, Employers' Liability, § 13:

''The rights and duties incident to the relation apply only while the servant is under the master's power of control and is performing services for him. At other times he is a stranger with the rights and duties of a stranger.''

In the latter case we also quoted extensively from the leading case of *Elliott v. Payne,* 293 Mo. 581 (239 S. W. 851, 23 L. R. A. 706), and again refer to that case. In the original opinion we discussed the case of *Fournier v. Androscoggin,* 120 Me. 236 (113 Atl. 270, 23 A. L. R. 1156), and adopted the following doctrine enunciated therein by the Supreme Court of that state with rela-tion to accidents to employees under the workmen's compensation law:

''If an accident does not occur 'in the course of' it cannot 'arise out of' the employment. In this particular class of claims the determining factor is, we think, whether the accident occurred in the course of the employment.  *  *  *  The words 'in the course of the employment' relate to the time, place and circum-stances under which the accident takes place. An acci-

dent arises in the course of the employment when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. (*Westman's Case,* 118 Me. 133, 142, 106 Atl. 532; *Larke v. John Hancock Mut. L. Ins. Co.,* 90 Conn. 303, 97 Atl. 320, L. R. A. 1916E 584, 12 N. C. C. A. 308; *Bryant v. Fissell,* 84 N. J. L. 72, 86 Atl. 458, 3 N. C. C. A. 585; *Eugene Dietzen Co. v. Industrial Board,* 279 Ill. 11, 18, 116 N. E. 684, Ann. Cas. 1918B 764, 14 N. C. C. A. 125.)''

To the same effect, see *Cox v. Kansas City Refining Co.,* 108 Kan. 320 (195 P. 863, 19 A. L. R. 90); *Payne v. Industrial Commission,* 295 Ill. 388 (129 N. E. 122, 13 A. L. R. 518); *Twin Peaks Canning Co. v. Industrial Commission,* 57 Utah 589 (196 P. 853, 20 A. L. R. 872).

■ The defendant contends that the plaintiff was on the premises of defendant when he sustained his injury. That is true. But that he was not there in the performance of his duty as a logger in the employ of defendant is also true. The plaintiff had nothing to do with the operation of the railroad, nor did he ever perform services for the defendant about the railroad. His testimony shows that he was employed in the woods, and that his labor involved logging operations in the timber. It is a general rule that, except by special contract, the protection of the Workmen's Compensation Law does not extend ''beyond the locality, or vicinity, of the place of labor.'' See 1 Honnold on Workmen's Compensation, § 109. See, also, *Hills v. Blair,* 182 Mich. 20 (148 N. W. 243); *Hoskins v. Lancaster,* 3 B. W. C. C., 476.

On this point, the Supreme Court of Illinois, in the case of *Danville, U. & C. Ry. Co. v. Industrial Commission,* 307 Ill. 142 (138 N. E. 289), said:

The scope of the employment includes the doing of things not directly connected with the work, but which

reasonably may be done within the time of the employment * * * . The controlling factor in determining whether the employee is in the course of his employment is whether at the time of the accident he was within the orbit, area, scope, or sphere of the employment.

■ This is not a case wherein the defendant had agreed to transport its workmen to and from their work daily as a part of its contract with them. It is a case where an injury was sustained by a workman at a time when he was not engaged in the services of the defendant or any one else. When he sustained the injury he was performing no duty that he owed to defendant, and the defendant had no control over him whatsoever. That his journey to Silverton and his return to the camp was purely a personal matter, and that he had performed no services for the defendant for some days, is the undisputed testimony of the workman. Clearly the court did not err in denying the motion for a directed verdict upon the ground that the plaintiff was under the protection of the Workmen's Compensation Law.

■ Now, with reference to the alleged negligence of the defendant in the operation of its train consisting of a heavy locomotive engine, a box car and 26 logging trucks: It is claimed that, while the train was moving at an estimated speed of 20 miles an hour, the engineer suddenly applied the brakes to the engine but did not apply them to the cars, thus causing the empty cars to jolt and jar with such violence that plaintiff was thrown from the car on which he was riding to the railway track below. Plaintiff says he was riding on the train by invitation of the defendant, and this statement is admitted by defendant. The contested issue relates to defendant's alleged actionable negligence and plaintiff's

alleged contributory negligence. With respect to this phase of the case, the following excerpt from 10 C. J., pp. 1134, 1135, is pertinent:

"A passenger on a freight or mixed train must exercise care and prudence commensurate with the increased dangers ordinarily incident to the management of such a train. He assumes the inconvenience and additional risks that are usually and reasonably incident to transportation on such a train; but he does not assume any risks which arise from a lack of proper care on the part of the carrier, and hence is not required to anticipate extraordinary dangers incident to the carrier's negligence."

See, also, sections 1304, 1387, 1481, 1507A of the same text, treating of care and prudence required of passengers on freight or mixed trains, and of the operators of such trains.

That the plaintiff herein was a passenger within the meaning of the foregoing declaration of law, see the case of *Harvey v. Deep River Logging Co.*, 49 Or. 583 (90 P. 501, 12 L. R. A. (N. S.) 131). See, also, 4 R. C. L., "Carriers," § 475; 4 Ann. Cass. 1131, note; 5 L. R. A. (N. S.) 721, note.

In the cause at issue, the trial court carefully instructed the jury in the matter of the defendant's alleged negligence in the operation of its logging train, and likewise with respect to plaintiff's alleged contributory negligence; and there was no error in its refusal to direct a verdict for defendant on the ground that plaintiff had failed to make out a case of negligence against it.

After a careful examination of the entire record in this case we are constrained to affirm the judgment appealed from.

BEAN, BELT and ROSSMAN, JJ., concur.

ON REHEARING

(286 P. 527)

ROSSMAN, J. Our previous opinion, we believe, unduly confines the operation of the Workmen's Compensation Act to a scope narrower than that contemplated by its broad and humane purposes; we also believe that the plaintiff's injury, for which he seeks redress from the defendant, befell him in an "accident arising out of and in the course of his employment"; we have, therefore, concluded that our previous decision cannot be sustained, that the judgment of the circuit court must be reversed, and that the plaintiff's action should be dismissed. The circumstances, we feel, warrant us in stating fully the manner in which we have reached our conclusions.

■ Before considering again the construction which should be placed upon the above-quoted words which the parties seem to feel are the crucial ones of the act, it may be well to advert once more to the facts before us. The plaintiff, after having been in the employ of the defendant for many months, engaged in logging operations, concluded to return to his home in Silverton on Saturday, November 6, 1926, for a short visit; apparently he had no specific objective in mind which he had determined to accomplish during his absence from the defendant's camp. It is clear that neither he nor the defendant had any thought of terminating the plaintiff's employment and that he expected to shortly return and resume his labors. Thus he retained his bunk house; his blankets, personal belongings, etc., remained in it at the defendant's camp and in fact

when he concluded his labors on Friday the circumstances were no different than when he quit his work on any other day with the exception that he did not expect to resume his task the following Monday. On Tuesday, November 9, the plaintiff decided to return so that he could again resume his work on Wednesday morning, November 10; such being his plan he presented himself at the Silverton terminus of defendant's logging railroad and spoke to an employee in charge of its logging train which was about to start for the camp. He was accepted aboard the train and in harmony with the uniform practice was charged no fare. This, together with the statement of facts contained in the previous decision, will suffice for the purpose of setting forth the relationship between the parties. It may be well, however, to remind ourselves of a few facts concerning logging camps which are well known. Work in these camps is distinguishable from that in the factory in the important fact that the logger's employment is discharged at a place which is far removed from his home, places of recreation and facilities for supplying his wants. He is unable to leave his home and proceed directly to the logging operations by means of a street-car, automobile, or other similar conveyance which takes the city employee to the factory. Due to the conditions which surround the scene of logging operations the woodsman is first hauled to the logging camp upon the logging railroad; from the latter place he is hauled each morning to the actual scene of his labors, and in the evening back again to the camp. The logging railroad, the camp, the donkey engines, cables, axes and saws, are all a part of the equipment with which the logging operations are conducted. It will be readily conceded that but few loggers would make the trip from the end of the logging railroad to the

camp but for the fact that their employment necessitates them. When the factory employee desires to go to or leave his employer's plant there are generally several routes available, all consisting of public streets; but when the logger undertakes to go or leave the scene of his labors there is generally only one practical way that he may employ, that is the logging railroad. Thus, it can be said that in this manner the employer controls the employee's movements until the latter has reached the terminal of the railroad. While the logger is staying at the camp with its bunk houses, limited boarding accommodations and meager facilities for supplying the wants of life he finds frequent occasion to quit work for short periods of time and visit the city. These temporary cessations from labor are due to the nature of the logging camp and the kind of work in which the men are engaged; thus Varrelman (see *Varrelman v. Flora Logging Co.*) quit for a day to supply himself with a pair of shoes. Without shoes, clothing, dental and medical attention the employee might be unable to continue his labors; and it is easily conceivable that unless the employers afforded facilities so that the logger could occasionally get out of the camp, visit his home and obtain the recreation not afforded by the camp an intelligent type of workman would not offer himself for work in the woods. It follows that to supply the workman with the means of going "from the camp to the outside world," as the parties have termed these trips, serves not only the purposes of the employee but also renders the business of the employer possible. In the present case the logging railroad was the most practical means whereby the logger could go from his place of employment to the city; if he did not use the railroad he was compelled to tramp over a trail, six or seven

miles in length, which connected with the county road, 10 or 12 miles in length, and thus was brought to the city of Silverton. In the Varrelman case the logging railroad was the only means of ingress to and egress from the camp. Passage back and forth upon these logging trains constitutes one of the hazards incident to the employment of the logger; the proof of this statement can be readily obtained by an inspection of the reports of this court and of the Supreme Court of Washington, wherein will be found numerous instances of actions by loggers for injuries sustained in passing to and from the camp on the crude equipment provided by the employer.

From the foregoing the conclusion seems justifiable that the plaintiff would not have been injured but for his employment. It is true that when he was injured he was not working for the defendant, but he was in its employ. His work did not begin until the following morning; but his employment began when the defendant accepted the plaintiff into its employ some months previously. Hence the employment continued, not only while he was working for the defendant in the woods but also upon his trip to Silverton and back.

We come now to the more specific question whether the injury arose out of and in the course of the employment. This court, as well as other courts, has many times pointed out that the problem whether an injury arises out of and in the course of the employment is not to be determined by the precepts of the common law governing the relationship between master and servant; these ancient rules include the principles defining negligence, assumption of risk, fellow servant doctrine, contributory negligence, etc. Likewise all courts are agreed that there should be

accorded to the Workmen's Compensation Act a broad and liberal construction that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical construction. Further, the cases agree that these acts do not mean one thing when it is to the advantage of an employee so to maintain, and something else when an employer invokes the protection of the act in his favor.

■ One of the purposes of the Workmen's Compensation Acts is to broaden the right of employees to compensation for injuries due to their employment. Since these acts contemplate compensation for an injury arising out of circumstances which would not afford the employee a cause of action, the right to redress is not tested by determining whether a right of action could be maintained against the employer. *Stark v. State Industrial Accident Commission,* 103 Or. 80 (204 P. 151). The word "employment," as used in such legislation, is construed in its popular significance. We quote from the decision of the Montana court in *Wirta v. North Butte Mining Co.,* 64 Mont. 279 (210 P. 332, 30 A. L. R. 964):

"The word 'employment,' as used in the Workmen's Compensation Act, does not have reference alone to actual manual or physical labor, but to the whole period of time or sphere of activities, regardless of whether the employee is actually engaged in doing the thing he was employed to do. * * * To say that plaintiff 'ceased' working for the defendant is not equivalent to saying that he severed the relation of employer and employee."

Since the courts have recognized the broad humane purposes of the act they have readily perceived that the mere fact that the injury befell the claimant at a

moment when he was not performing manual labor for his employer does not necessarily prove that the accident did not arise out of or in the course of the employment. The words just mentioned which are a part of most of the acts are never qualified by the limitation that the injury must have been inflicted during regular working hours: *Honaker & Feeney v. Hartley*, 140 Va. 1 (124 S. E. 220). From *Larke v. John Hancock Mutual Life Insurance Co.*, 90 Conn. 303 (97 Atl. 320 L. R. A. 1916E, 584), we quote: "The period of employment has sometimes been held to cover a period other than that for which wages are paid." And from our own decision in *Wells v. Clark & Wilson Lbr. Co.*, 114 Or. 297 (235 P. 283), the following is taken: "Yet one may be under such a contract with another as to be a present employee, although the actual work incident to the employment may not be begun until a future day." And since all workmen's compensation legislation is noticeably inspired by the English act the following language quoted from *John Stewart & Son v. Longhurst* (1917) A. C. 249 (Ann. Cas. 1917D 196), is appropriate: "It has been established by a series of decisions that employment, for the purposes of the Workmen's Compensation Act, may in many cases be regarded as existing before the actual operation of the workman has begun, and that it may continue to exist after the actual work has ceased." In other words, the work may suspend and yet the employment continue. We shall later refer to two cases which applied these principles in a very practical manner. In the one the deceased employee had maintained his home in North Dakota but performed his services in Minnesota. He lost his life while returning from the latter state to his home to spend the week-end. In the other case a school teacher was killed at a railroad crossing

while on her way to attend a teacher's institute. It was desirable that she should attend the institute, but the law did not make attendance mandatory. In both cases the courts held that the death arose in an "accident arising out of and in the course of his employment" and compensation was ordered.

Since employment is construed in its popular signification an employee is frequently granted compensation from the fund, even though his hours of service have not yet begun, or have ended, and even though he is not upon the premises of his employer engaged in physical service of the latter. Thus in *Holt Lmbr. Co. v. Industrial Com. of Wisconsin,* 168 Wis. 381 (170 N. W. 366), the court said: "This court has held that the relation of master and servant extends beyond the hours the servant is actually required to labor, and in some instances to places other than the premises where the servant is employed." Numerous authorities are cited by the court in support of its text; in some the employee was held entitled to compensation when an injury befell him while he was eating lunch upon the premises of his employer. Additional authorities of like kind are *Zurich General Accident & Liability Ins. Co. v. Brunson et al.,* 15 Fed (2d) 906; *Bylow v. St. Regis Paper Co.,* 179 App. Div. 555 (166 N. Y. S. 874), and *Corvi v. Stiles and Reynolds Brick Co.,* 103 Conn. 449 (130 Atl. 674). Other authorities cited by the Wisconsin court in support of the principle stated by the above quotation hold that an employee is entitled to compensation for an injury sustained by him while sleeping upon the premises of the employer when that act was contemplated by his contract of employment; those authorities, like the first group, hold that the injury arose out of and was incidental to his employment. An additional well-reasoned

case is *Giliotti v. Hoffman Catering Co.*, 246 N. Y. 279 (158 N. E. 621, 58 A. L. R. 500). In other words, the period of employment is not confined to the period for which wages are paid: *Larke v. John Hancock Mutual Life Ins. Co.*, supra. From *Giliotti v. Hoffman Catering Co.*, supra, we quote:

"The relation of employer and employee did not cease because the employee was off duty. There was a continuity of employment. Sleeping on the premises in a room provided by the employer in the servants' quarters was an incident of the employment, mutually beneficial to employer and employee, not a temporary suspension of it. * * *

"The accident which resulted in Giliotti's death, therefore, arose during the course of his employment."

Well-reasoned authority cited with approval by later adjudications may be found which hold.that an employee, who is procuring his lunch during an hour for which he is not being paid and is on premises neither owned nor controlled by the employer, is subject to compensation for an injury which thus befalls him. These were the facts in *Re. Sundine's Case,* 218 Mass. 1 (105 N. E. 433, L. R. A. 1918A, 318), from which we quote:

"The first contention, that she was not in the employ of Olsen while she was going to lunch, cannot be sustained. Her employment was by the week. It would be too narrow a construction of the contract to say that it was suspended when she went out for this merely temporary purpose and was revived only upon her return to the workroom. It was an incident of her employment to go out for this purpose: *Boyle v. Columbian Fire Proofing Co.*, 182 Mass. 93, 102. The decisions upon similar questions under the English act are to the same effect: *Blovelt v. Sawyer* (1904), 1 K. B. 271, which went on the ground that the dinner hour,

though not paid for, was yet included in the time of employment: *Moore v. Manchester Liners,* 3 B. W. C. C. 527, where the House of Lords reversed the decision of the Court of Appeal, reported in (1909) 1 K. B. 417, and held, following the dissenting opinion of Moulton, L. J., that a temporary absence by permission, though apparently of longer duration than would have been likely in the case before us, did not suspend the employment, and that an injury occurring during such a temporary absence arose 'out of and in the course of' the employment: *Cane v. Norton Hill Colliery Co.,* 2 B. W. C. C. 42, and (1909) 2 K. B. 539; *Keenan v. Flemington Coal Co.,* 40 Sc. L. R. 144; *MacKenzie v. Coltness Iron Co.,* 41 Sc. L. R. 6.''

And in *Sexton v. Public Service Commission,* 180 *App. Div.* 111 (167 N. Y. S. 493), an employee was held entitled to compensation for an injury sustained while taking a shower bath. The facts were that he was supervising the construction of a part of the subway of New York city. In connection with his work he became so dirty and covered with filth that he felt it necessary to take a bath before he could continue his work. While taking the bath his foot slipped on the marble floor and he sustained an injury. Held:

''It is plain that if the claimant was taking a bath for his own pleasure or comfort, and sustained an injury thereby, it would not arise out of and in the course of his employment in building the subway. But the evidence and findings show that the nature of the employment was such that the employee became very dirty * * * and the bath was a necessity arising out of the employment and to enable him to continue it. * * * We conclude, therefore, that it was a duty of and an incident to his employment that he should be washed in order to continue his employment, and that the Commission committed no error in finding that the injury arose out of and in the course of his employment.''

A careful study of the foregoing cases, as well as the ones to which reference will later be made, seems to warrant the conclusion that the courts deem that the theory of Workmen's Compensation Acts is to grant compensation to an injured workman on account of his status. He is an integral part of the industry and the latter should bear the costs of his recovery like it bears the costs incurred by the replacement of mechanical parts. When the status of an employee, that is, his relationship to the industry, brings him within the zone where its hazards cause an injury to befall him he is entitled to compensation. The courts which allowed the above recoveries, and other courts to whose decisions we shall' later advert, evidently did not confine their searches to the doubtful words "accident arising out of and in the course of his employment," but bore in mind this general purpose of the act as revealed by its entire text. Such being the sources of their interpretation they found no obstacle to an allowance of compensation whenever the employee established that his relationship to the industry brought him within the zone where one of its hazards inflicted an injury upon him. The modern authorities seem to accept the above as the proper basis for construction. Our conclusion is especially suggested by the Federal Supreme Court in the case of *Cudahy Packing Co. v. Parramore,* 263 U. S. 418 (44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532), where an employee sustained an injury upon the public streets while approaching the plant of his employer several minutes before the hour of work was to arrive. We quote from the decision the following:

"Workmen's Compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman

is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital —the one for the sake of the wages and the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured. And this is not to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say that it is enough if there be a casual connection between the injury and the business in which he employs the latter—a connection substantially contributory though it need not be the sole or proximate cause. Legislation which imposes liability for an injury thus related to the employment, among other justifying circumstances, has a tendency to promote a more equitable distribution of the economic burdens in cases of personal injury or death resulting from accidents in the course of industrial employment, and is a matter of sufficient public concern (*Mountain Timber Co. v. Washington,* supra, p. 239) to escape condemnation as arbitrary, capricious or clearly unreasonable. Whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case. The fact that the accident happens upon a public road or at a railroad crossing and that the danger is one to which the general public is likewise exposed is not conclusive against the existence of such casual relationship, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree.''

The above being the test by which the right to compensation is determined, the propriety of the awards in the noon-hour lunch, sleeping upon the premises, shower bath, etc., cases becomes apparent. We shall refer to the facts of one of these cases by way of sum-

mary. In *Zurich General Accident & Liability Ins. Co. v. Brunson,* 15 Fed. (2d) 906, employees who had been working in the woods built a fire during the noon hour on the steep slope to dry their clothes and warm themselves while they ate their lunches. Somehow the plaintiff, who was one of them, fell down the slope, into the fire and sustained injuries. The holding of the Circuit Court of Appeals for the Ninth Circuit that this injury arose out of and in the course of the employment is easily explainable under the above interpretation of those who are entitled to the compensation provided by the act.

In all of the foregoing instances the injury, like that in our case, was sustained while the employee was doing something which was ancillary to his employment. We quote once more from *Larke v. John Hancock Mutual Life Ins. Co.,* supra:

"The duty ancillary or incident to the employment has in some instances been held to include the doing of something primarily for the benefit of the employee, but ultimately it is assumed for the master, as the preparation of a noon-hour lunch, or the doing of something by the employee which he reasonably believes for the master's interest."

One might be tempted to conclude that in the various cases reviewed the court felt that eating the lunch, sleeping upon the premises, or taking the shower bath were acts indirectly for the benefit of the employer, and that therefore an injury sustained in the course of such acts should be compensated out of the fund. Possibly a better theory of these decisions is that in all of these cases the nature of the work was such that the workmen's usefulness was increased if he ate his lunch near his workbench, or slept upon the premises at night so that he might start his fires early

in the morning; thus since he was exposed to the hazards of the industry while eating or sleeping an award of compensation was held justifiable. Such being the trend of authority it would seem singular to deny compensation to another who in returning to work, and thus doing an act beneficial to his employer, is injured by one of the hazards of the industry.

■ The above will suffice to establish the fact that in order to be entitled to compensation it is not necessary that at the time of the accident (1) the employee was doing something for the direct benefit of the master, (2) that he was at his place of duty, and (3) that he was injured during working hours. In practically all of the foregoing cases all three of these elements were missing.

The next group of cases which we shall review may be preceded by the following quotation from *Wells v. Clark & Wilson Lumber Co.,* supra:

"Numerous authorities are cited by appellant to the effect that an employee going to or returning from his work or going to the place where he is employed to perform labor is 'acting in the course of his employment,' and is subject to the provisions of the Workmen's Compensation Act. This is sound law."

■ In the cases of the type adverted to by the above quotation the employee was held entitled to the benefit of the act whenever his relationship to the industry subjected him to its hazards in a greater degree than an ordinary member of the public. It will be observed, as we proceed, that the mere fact that the morning whistle had not blown was immaterial; likewise no controlling significance was attached to the fact that the accident occurred upon a public street and that the tort-feasor was a third party. The rule expressed in

*Wells v. Clark & Wilson Lumber Co.* is general. The cases which it suggests may be more specifically classified as follows: (1) An employee upon whom an injury is inflicted, while being conveyed to or from his work in a conveyance furnished by his employer as an incident of the contract of employment, is generally held entitled to compensation: *American Coal Mining Co. v. Crenshaw,* 77 Ind. App. 644 (133 N. E. 394); *New Staunton Coal Co. v. Industrial Com.,* 304 Ill. 613 (136 N. E. 782); *Central Const. Co. v. Harrison,* 137 Md. 256 (112 Atl. 627); *In Re Donovan,* 217 Mass. 76 (104 N. E. 431 Ann. Cas. 1915C, 778); *State v. District Court,* 141 Minn. 348 (170 N. W. 218); *Fisher v. Tidewater Bldg. Co.,* 96 N. J. L. 103 (114 Atl. 150); *Littler v. George A. Fuller Co.,* 223 N. Y. 369 (119 N. E. 554); *DeCamp v. Youngstown Municipal Ry. Co.,* 110 Ohio St. 376 (144 N. E. 128); *McClain v. Kingsport Improvement Corp.,* 147 Tenn. 130 (245 S. W. 837); *Richards v. Morris,* 110 L. T. R. (N. S.) 496; *E. Clemens Horst Co. v. Hartford Acc. & Indemnity Co.,* 27 Fed. (2d) 42; *Norwood v. Tellico River Lumbr. Co.,* 146 Tenn. 682 (244 S. W. 490, 24 A. L. R. 1227); *Anderson v. Hickman & Co.,* 21 Butterworth's Workmen's Compen. Cases, 369; *Hackley Co. v. Industrial Comm.,* 165 Wis. 586 (162 N. W. 921 L. R. A. 1918A, 277); *Scalia v. American Sumatra Tobacco Co.,* 93 Conn. 82 (105 Atl. 346); *Morrison v. Owners, etc.,* 21 B. W. C. C. 163; *Wirta v. North Butte Mining Co.,* 64 Mont. 279 (210 P. 332, 30 A. L. R. 964), and Prof. Francis H. Bohlen, 25 Harv. L. Rev. 401. (2) Generally an injury to the employee is regarded as one arising out of and in the course of the employment when it was sustained upon a road or other way leading to the plant which the contract of employment contemplated the workmen should use in going to and from their places of

employment; that the road is a public one is immaterial provided the demands of the employment exposed the injured man to the hazards in a greater degree than the common public: *Sylvia Procaccino v. E. Horton & Sons,* 95 Conn. 408 (111 Atl. 594); *Robertdon v. Allen Bros.,* 77 L. J. K. B. (N. S.) 1072; *Cudahy Packing Co. v. Parramore,* supra; *Littlefield's Case* 126 Me. 159 (136 Atl. 724); *Dominguez v. Pendola,* 46 Cal. App. 220 (188 P. 1025); *Swanson v. Latham,* 92 Conn. 87 (101 Atl. 492); *Bountiful Brick Co. v. Giles,* 276 U. S. 154 (48 S. Ct. 221 72 L. Ed. 507); *Wabnec v. Clemons Logging Co.,* 146 Wash. 469 (263 P. 592); *E. Clemens Horst Co. v. Hartford Acc. Indemn. Co.,* supra. (3) An injury arises out of and in the course of the employment where it is sustained upon the premises of the employer and is a rational consequence of some hazard connected with the employment; or stated otherwise, if there is a casual connection between the employment and the injury sustained upon the employer's premises it is deemed to have arisen out of the employment, even though the danger to which the employee was exposed originated outside of his employment: *Stark v. State Industrial Acc. Com.,* 103 Or. 80 (204 P. 151); *Wirta v. North Butte Mining Co.,* supra; *Holt Lmbr. Co. v. Industrial Com. of Wis.,* supra; *Lynch v. City of New York,* 242 N. Y. 115 (151 N. E. 149); *Favorite v. Kalamazoo St. Hospital,* 238 Mich. 566 (214 N. W. 229); *Zurich General Acc., etc., Co. v. Brunson,* 15 Fed. (2d) 906; *Mann v. Glastonburg Knitting Co.,* 90 Conn. 116 (96 Atl. 368 L. R. A. 1916D, 86), and *Giliotti v. Hoffman Catering Co.,* 246 N. Y. 279 (158 N. E. 621, 56 A. L. R. 500).

We have stated the above principles broadly because it is difficult to formulate precise rules which

will justly govern all cases. We are satisfied, however, that the purpose of legislation of this type is to make every industrial enterprise bear the pecuniary loss of all accidental injuries to its employees sustained by them as a result of risks to which they were exposed by reason of their employment in a substantially greater degree than the ordinary members of the public. The above principles, which we have endeavored to deduce from the foregoing cases, seem to be applicable to the controversy before us; for the plaintiff was upon the premises of his employer, being transported upon a conveyance furnished and operated by his employer; the route that was being traveled to gain access to the camp and logging operations was the most practical one available and was placed at plaintiff's disposal by the defendant; there existed between this injury which the plaintiff sustained upon the premises of his employer, and his employment, a direct substantial causal connection; and finally the plaintiff's status as an employee was the direct cause of subjecting him to this industrial hazard. But for his status he would not have been there.

A review of the facts of some of the cases just cited may be helpful. Of those cited in support of the first principle we notice:

In *Scalia v. American Sumatra Tobacco Co.*, 93 Conn. 82 (105 Atl. 346), the tobacco company desired to secure the services of some women tobacco pickers for its plantation. Just prior to this the two decedents and some other women had been employed upon another plantation where the work was nearing completion. The defendant sent its agent to the latter plantation to invite all women tobacco pickers who might care to work on its plantation to be at the wait-

ing station in the village of Enfield the next morning to be transported to its plantation. The two decedents the following morning presented themselves at the appointed place, got in the auto, and were later killed when it skidded. It was held that the relationship was that of master and servant and not carrier and passenger, and that the claim was proper under the Workmen's Compensation Act.

In *American Coal Mining Co. v. Crenshaw,* 77 Ind. App. 644 (133 N. E. 394), some coal miners were transported daily four miles from the city to the mine on a railroad train owned by a public carrier. Each miner paid the defendant, employer, $1.25 per month for the privilege of riding on the train; the total thus collected was substantially sufficient to pay the railroad company its charges for operating the train. It was held that plaintiff, who was injured while upon the train, was entitled to compensation under the Workmen's Compensation Act.

In *Central Construction Co. v. Harrison,* supra, the employee was also injured while being transported. Here the railroad fare was paid by the federal government.

We quote from *State v. District Court,* 141 Minn. 348 (170 N. W. 218):

"The relator claims that the accident did not occur in the course of Chambers' employment. He was engaged as a solicitor in the grain business and had his home at Bismarck, which was the point from which he worked. He had been using the auto in the course of his business during the day and was returning homeward. The evidence sustains, if indeed it does not require, a finding that he was in the course of his employment." See also *Lawrence v. Matthews,* 21 B. W. C. C. 345.

In *Littler v. George A. Fuller Co.*, supra,

"The vehicle was provided by the employer for the specific purpose of carrying the workmen to and from its place of the employment and in order to secure their services. The place of injury was brought within the scope of the employment because Littler, when he was injured, was 'on his way * * * from his duty within the precincts of the company': *De Voe v. N. Y. Street Railways*, 218 N. Y. 318, 320 (113 N. E. 256, L. R. A. 1917 A. 250). The day's work began when he entered the automobile truck in the morning and ended when he left it in the evening. The rule is well established that in such cases compensation should be awarded."

From *Wirta v. North Butte Mining Co.*, supra, we quote:

"An examination of the many cases decided by the courts and Industrial Accident Boards in this and in other countries discloses that there are but few exceptions to the rule that the employer and employee are within the provisions of the Workmen's Compensation Law when the employee is upon the employer's premises, whether engaged in some line of duty connected with his employment or in going to and from his employment. The rule has been applied to cases of an employee employed in a mine, and it has been frequently held that the obligation of the employer does not cease toward the employee until after the employee has been brought to the surface."

We quote from Professor Bohlen's splendid article the following:

"A distinction is indicated though not clearly expressed, between sailors going ashore with and without leave. In the first case he may not recover for injuries received upon the public docks or quays, nor while attempting to board a public boat hired by him to take him to his vessel. Some of the earlier cases required the sailor to have actually returned to the vessel itself, and did not regard as part of the vessel

gangways and ladders, though owned and controlled by the ship and provided as a means of access thereto or so used with the knowledge and permission of those in command. Recent cases, however, hold that any means or access provided by the vessel and permitted by those in command to be used for that purpose are a part of the vessel, and that a sailor on his return from shore-leave reenters employment when he has actually reached such means of access. These cases proceed upon the same principles as those which, as has been seen, determine when the employment of a workman entering his employer's premises begins; the vessel is regarded as the place at which the work is to be done, the ladders and gangways which are provided by the vessel and under its control are the equivalent of those parts of the premises provided by the master as an entrance to and exit from the place of work." See also *Morrison v. Owners, etc.*, 21 B. W. C. C. 163.

In *Richards v. Morris*, supra, the deceased was a laborer employed upon a farm situated upon an island two miles distant from the coast. His wife resided on the mainland. His employer permitted him to go home to his wife every Saturday night returning to the island the following Monday morning, and for the purpose of enabling him to cross provided a small boat. The crossing was always dangerous. Held, that when he was fatally injured while attempting to land from the boat upon arrival at the mainland, the injury occurred out of and in the course of his employment and his widow was entitled to compensation.

In *Hackley Co. v. Industrial Com. of Wisconsin*, supra, the plaintiff was an employee of a logging company at one of its camps. In February of 1915 he told his foreman that he was going to take a vacation, and the latter therefore told him to go to Phelps, a nearby town, where the logging company maintained its office, to get his pay. While riding to Phelps upon the log-

ging train, operated by the employer, which was the method the employees generally used in going back and forth, he was injured. It was held that he was entitled to compensation.

In *Fisher v. Tidewater,* supra, the employee, after quitting work went to board a train to go to a certain ferry station on his way home. While attempting to board the shuttle car, provided for the employees by the employer, he was struck by a train of another railroad and killed. The method of furnishing such transportation was for the company to give tickets which were surrendered to the conductor as fare. It was held that the accident ''arose out of and in the course of the employment.'' Here it will be observed that the injury did not happen while the employee was being transported, but while he was on his way to transportation.

The respondent has called to our attention the two recent cases of *Walker v. Hyde,* 43 Idaho 625 (253 P. 1104), and *Denver & R. G. W. R. Co. v. Industrial Com.,* (Utah) (269 P. 512, 62 A. L. R. 1436) ; he suggests that they reject the rule which we have deduced from the foregoing cases. Authorities can readily be found which are contra to those we have just digested; but the two recent ones, submitted by the defendant, recognize the principle which underlies those we have reviewed. For instance in *Walker v. Hyde,* where a woodsman was killed by a truck while returning to his place of labor after eating his noon lunch, the court pointed out, ''No transportation was furnished or was to be furnished by the employer. If the truck had been furnished as a means of transportation there would be no question about the right of claimants to an award.'' In *Denver & R. G. W. R. Co. v. Industrial Com.* the employer provided his men with free trans-

portation by means of a truck from a tool house to their place of work. The men were paid by the hour and their time was computed from when they left the tool house until they returned in the evening. Upon the occasion in question the deceased boarded the truck three-fourths of a mile before it reached the tool house and was killed while the truck was passing through town on its way to the tool house. The court held no compensation could be recovered because the terms of the employment contemplated transportation only from the tool house, and the risks and hazards in going to the latter were not peculiar to the deceased's employment.

A brief review of some of the cases cited in support of the second principle may be helpful.

In *Cudahy Packing Co. v. Parramore,* supra, the plaintiff was in the employ of the packing company and sustained an injury while on the public streets on his way to work. The Utah compensation act provided for payment of compensation for personal injury suffered by employees "by accident arising out of or in the course of his employment." The packing plant was located about six miles north of Salt Lake City; its employees generally resided in that city. In going to and from the plant the workmen proceeded along the main highway running north and south and passing the plant at a distance of one-half mile to the east. From this point a public road runs west to and beyond the plant, crossed, before reaching the plant, by three lines of railroad. The only practical way of ingress and egress for employees was along this road and across these railway tracks; this was the way constantly used. The plaintiff lived in Salt Lake City. On the morning of his injury he rode to the plant in the automobile of

another employee for the purpose of going to work. The automobile crossed over two of the railway tracks, and, when upon the third, was struck by an engine and the plaintiff was killed. This happened about seven minutes before the time when the plaintiff would have begun his work. The industrial commission of Utah awarded compensation; the Supreme Court of Utah affirmed the award, and the latter was upheld and affirmed by the federal supreme court.

From *Bountiful Brick Co. et al. v. Giles et al.,* supra, we quote:

"And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. * * *

"In other words the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer."

In *Sylvia Procaccino v. E. Horton & Sons,* supra, the plaintiff was an employee of the defendant. The defendant's plant and that of several others was

located upon an area of land between the Connecticut river and a canal. Immediately adjacent to the canal and running parallel to it were some railway tracks. Crossing the canal were two foot-bridges, one of which was owned by a paper company and the other was owned jointly by the defendant and another. The employees of the defendant and those of the other plants in going to and from their work used either one of these foot-bridges and the paths across the railway tracks which led to the different plants. The railway tracks and the land crossed by the paths were private property. Upon the occasion in question the decedent, when returning to work at the defendant's plant, after having dinner at his home and while crossing the tracks just before reaching the foot-bridge of the paper company, was struck by a train and was instantly killed. The compensation commission refused to make an award upon the ground that the death did not arise out of the decedent's employment. The Connecticut Supreme Court held that this was an injury for which the Workmen's Compensation Act contemplated an award. We quote from this decision as follows:

"Under these circumstances this employee was within the scope of his employment when he was passing to or from his work at the plant over the private property lying between Main street and the plant. In other words the use of this method of approach to the plant by this employee was an incidental term of his contract of employment annexed to it by the consent of his employers: *Merlino v. Connecticut Quarries Co.,* 93 Conn. 57 (104 Atl. 396). When this employee, under the facts found, entered upon the private property lying between Main street and the defendant's plant, he came within the zone of his employment, and all dangers and perils incident to the use of this method of approach were perils incident to and arising out of his employment."

In *Robertson v. Allen Bros.*, 77 L. J. K. B., (N. S.) 1072, the steward of a ship was returning from shore leave in an intoxicated condition and received injuries while attempting to board the ship by way of the cargo skid or stage instead of the gangway; compensation was allowed. In *John Stewart & Son v. Longhurst*, 1917 A. C. (Eng.) 247 (Ann. Cas. 1917D, 196), a carpenter had been employed in making repairs to a barge, and at the conclusion of the day's work, while passing along the quay, homeward bound, mistook his way in the darkness, fell into the lock and was drowned. Compensation was allowed.

In bringing to a close our review of this group of cases we quote from a comprehensive note in 40 A. R. L. 1477 the following words of the editor:

"While no general rule can be laid down, it may be said that the majority of the cases involving injury to an employee on his way to or from his work on the premises of his employer's customer hold that the injury arose out of and in the course of his employment, and that the courts will generally, unless the facts imperatively require a contrary decision, hold the employee in such case entitled to compensation, is highly probable, because, as stated in the opinion in *Re Betts* (1918) 66 Ind. App. 484 (118 N. E. 551), there is a tendency of the courts, indicated in the more recent cases, to give to compensation acts an interpretation as broad and liberal in favor of the employee as their provisions will permit, in furtherance of the humane purpose which prompted their enactment."

We come now to a brief review of the cases which illustrate the application of the third principle which we have sought to establish.

Our own case of *Stark v. State Industrial Accident Com.*, supra, is a good illustration. There some

employees of a ship-building company, while engaged in play during a momentary cessation of their labors, turned the compressed air from the air hose upon one of their fellow employees. He later died and his widow sought relief under the act. We held that compensation was proper.

In *Lynch v. City of New York* the claimant was a helper in a city hospital, situated on an island owned by the city and occupied entirely by city institutions. After completing her work for the day she prepared to leave the island to go to the city; while on her way from the nurses' home, on a sidewalk which was the proper passageway for her to take, she fell and received injuries. It was held that her employment did not cease when she left the hospital but continued while she was on the island leaving and returning thereto on the route provided by the employer and that since her employer exposed her to the hazards of the way in and out she was entitled to compensation.

*Favorite v. Kalamazoo State Hospital,* supra, is quite similar in its facts and holding.

The facts disposed of in *Zurich General Accident, etc., Co. v. Brunson,* supra, we have already reviewed. That case well illustrates the application of the principle now under consideration.

From a note in 49 A. L. R. 424, we quote:

"It is generally held that an injury sustained by a miner, while proceeding, on the premises of his employer, to his place of employment, or an injury sustained while preparing to begin his day's work, as while changing his clothes, arises out of and in the course of his employment within the meaning of the act."

In *Mann v. Glastonbury Knitting Co.,* 90 Conn. 116, (96 Atl. 368 L. R. A. 1916D, 86), the court pointed out

that where an injury arising from a risk of the business is suffered while the employee, though not doing the work for which he was employed, is still doing something which the employer has expressly or tacitly consented that his employees might do, incidental to their employment, at that time and place, the injured employee is within the scope of his employment. A good illustration is afforded in *Giliotti v. Hoffman Catering Co.*, 246 N. Y. 279 (158 N. E. 621, 50 A. L. R. 500); here the employee was a chef whose employer provided for him a room upon the premises where he was entitled to sleep. From Sunday night until Tuesday morning he was not required to work and was at liberty to go where and do as he pleased. On Monday as he was alseep upon the premises he died in the course of a fire. The court held that compensation was proper.

■ Let us advert once more to the evidence; the defendant in its answer alleges that at the time of plaintiff's injuries he was in its employ; the plaintiff's testimony warrants the conclusion that at all of the times with which we are concerned the relationship of employer and employee existed between him and the defendant, and the industrial accident commission, both by brief and oral argument, concedes that the relationship existed at the times with which we are concerned.

Applying the analogy of the foregoing cases and the principles which we have endeavored to deduce from them the conclusion comes irresistibly that although the plaintiff's work would not resume until Wednesday morning the employment began several months previously and continued during the trip from Silverton. Transportation to and from plaintiff's work upon these occasional trips was incidental to his

employment; hence, the employment continued during the transportation in the same way as during the work. The injury, occurring during transportation, took place within the period of his employment, and at a place where he had a right to be, and while he was doing something incidental to his employment, because rendered necessary by the peculiar circumstances attendant upon logging operations.

■ ■ But it is argued that this defense cannot be maintained because the employer, so the plaintiff says, made no remittances to the industrial accident fund for the time consumed by the plaintiff in traveling. This argument is not available to the plaintiff for several reasons. First, no testimony upon the subject was taken; hence the evidence is silent upon this subject. Second, the Industrial Accident Commission has signified, both by brief and oral argument, its entire willingness to pay the plaintiff the compensation provided by the act, hence we must assume that whatever remittances were payable have been discharged. And finally in the cases where the employee was going to or from his work upon his own time, in the noon hour lunch cases, the injury while sleeping cases, etc., compensation was not withheld. Compensaation is not denied when an injury occurs while such an incidental act is being performed even though remittance has not been made for the period of time involved.

■ Next it is argued that since the plaintiff's approach to his actual labors would be interrupted by a night at the camp he is not entitled to compensation out of the fund. The Industrial Accident Commission has construed the act otherwise, and such administrative rulings are entitled to serious consideration: *Biggs v. McBride,* 17 Or. 640 (21 P. 878, 5 L. R. A. 115); *Kelly v.*

*Multnomah Co.,* 18 Or. 356 (22 P. 1110) ; United States
*v. Johnson,* 124 U. S. 236 (8 S. Ct. 446, 31 L. Ed. 389) ;
*Robertson v. Downing,* 127 U. S. 607 (8 S. Ct. 1382, 32
L. Ed. 269) ; *Emmons Coal Co. v. N. & W. Ry.,* 272 U. S.
709 (47 S. Ct. 254, 71 L. Ed. 485). There is no contention
that the plaintiff could have taken a later train and thus
avoided a night in the camp. Possibly he could have
tramped the county road and trail, and by properly
timing himself could have arrived at the scene of his
labors at the moment the whistle blew. Had he done
so, we assume that no serious objection could have
been found to an award of compensation. But the
mere fact that the sun sets and arises again before
actual labor begins we do not understand operates to
defeat an award.

We shall now review briefly three cases which
possess facts very similar to those now before us. In
*State ex rel. v. District Court,* 141 Minn. 61 (169 N. W.
274), one Arnold Von Hagen resided in Bismarck, N.
Dakota, but plied his vocation as a grain buyer in Min-
nesota. At the week-end Von Hagen decided to return
to Bismarck from Minnesota so that he might spend
Sunday with his family. While endeavoring to cross
a river he was drowned. It was there argued that his
widow was not entitled to compensation "because it
appears that he did not come to his death by reason
of an accident arising out of and in the course of his
employment; that at the time of the death he had been
through with his work since the preceding day; that
there was no necessity for his getting home on Sunday
*  *  *." The court held that compensation should
be allowed. We quote from the decision the following
brief excerpt: "We see no reason why he might not
properly, and without stepping outside the scope of his
employment return to his home from his field of labor

on the Sabbath day." In *Stockley v. School District*, 231 Mich. 523 (204 N. W. 715), a school-teacher while upon a journey to a neighboring town to attend a teacher's institute was killed when the automobile in which she was riding collided with a train. The deceased was not required to attend the institute; her refusal to go would not have constituted grounds for her discharge; but all teachers were urged by the school board to attend. It will be observed that attendance at the institute was an act incidental to her employment, and that the accident did not befall her while engaged in the sessions of the institute but while journeying to the town where the institute would convene. The court in holding that compensation was due expressed itself, among other matters, thus: "Various exceptions to that general rule are found in cases where it is made to appear that the employee, although away from his regular place of employment, even before or after customary working hours, was doing some special service or discharging some duty incidental to the nature of his employment in the interest of or under direction of his employer." The last of the three cases which we have just mentioned is *E. Clemens Horst v. Hartford Accident & Indem. Co.*, supra. In that case the employer (plaintiff) desired to secure 2,000 hop pickers to begin work September 1, 1925, and who would live at the employer's camp; each would be required to deposit the sum of $1 for the use of his living quarters. August 5 W. P. Rogan and wife contracted to enter plaintiff's employ and begin picking hops September 1; it was agreed that the plaintiff would transport the Rogans without charge from the railway depot at Salem to the hop fields. August 29th the Rogans presented themselves at the depot and were met by the plaintiff's agent with a motor truck. Upon

the journey they were thrown from the truck and sustained injuries. The plaintiff carried with the defendant a policy of insurance indemnifying the former "against loss by reason of the liability imposed by law upon the assured for damages on account of bodily injuries suffered * * * by any employee * * * while at or about the work of the assured described in warranty 4, which for the purpose of this insurance shall include all operations necessary, incident, or appurtenant thereto * * * whether such operations are conducted at the work-place defined and described in the warranties, or elsewhere." Warranty 4 follows: "Hop-picking—including all work incidental thereto." One of the principal contentions the defendant advanced to escape liability upon its policy was that the Rogans were not employees of the plaintiff at the time of their injury. This argument was disposed of:

"We are of the opinion that no unwarranted meaning is given to the word 'employee,' as it is used in the policy, if it is held to include all persons who shall have entered into a contract of employment with the plaintiff, and in pursuance of that contract rendered themselves to the plaintiff at an appointed rendezvous, to be carried by it to the hopyards, where the work was to be performed, although in the instant case that was done two days prior to the actual commencement of the work; for in the contract pains were taken to state broadly the risks that were intended to be insured against, and to provide that protection should extend to all operations necessary or appurtenant to hop picking, 'including all work incidental thereto.' Clearly, the transportation of the Rogans to their working place was an operation necessary and incidental to the work which they had contracted to perform, and was distinct and separate from the work of hop picking.

"The fact that hop picking was not to begin until two days later does not, we think, affect the question of the defendant's liability. Said the court in *Cudahy Packing Co. v. Parramore,* 263 U. S. 418, 426 (44 S. Ct. 153, 155; 68 L. Ed. 366, 30 A. L. R. 532): 'We attach no importance to the fact that the accident happened a few minutes before the time Parramore was to begin work, and was, therefore, to that extent, outside the specified hours of employment. The employment contemplated his entry upon and departure from the premises, as much as it contemplated his working there, and must include a reasonable interval of time for that purpose.' "

The court held that the defendant was liable upon its policy because the Rogans were at that time employees. The recent Washington case of *Wabnec v. Clemons Logging Co.,* 146 Wash. 469 (263 P. 592), is clearly in point and constitutes an authority in favor of the defendant's contentions. *Norwood v. Tellico River Lmbr. Co.,* 146 Tenn. 682 (244 S. W. 490, 24 A. L. R. 1227), which is relied upon by the defendant is opposed to the current trend of reasoning upon this subject; it has not met with favor: 13 St. Louis Law Review, 77.

We have not mentioned case by case all of the authorities relied upon by the minority opinion, nor those cited in the very able brief of the plaintiff, which displays both skill and industry, but our conclusions in regard to the governing principles of the law, which we have endeavored to carefully set forth, sufficiently disposes of most of those cases. We shall, however, mention *Wells v. Clark & Wilson Lmbr. Co.,* supra, and *Brady v. Oregon Lmbr. Co.,* 117 Or. 188 (243 P. 96, 45 A. L. R. 812), because they are typical of many of the cases the plaintiff especially calls to our attention. In the first first of these two cases the evidence failed to show that the plaintiff was in the defendant's employ; she was

upon its premises seeking employment, but had not yet been accepted into its employ. In the latter of the two cases the relationship of employer and employee, which at one time had existed, had been fully terminated before the injury befell the plaintiff. It is evident that such cases are not similar to the facts before us.

It follows that our previous decision was in error and that the judgment of the circuit court should be reversed.

BELT, J., McBRIDE and RAND, JJ., concur.

---

BROWN, J. (dissenting). This cause is before us on rehearing. For a statement of the issues made by the pleadings and the evidence adduced in support thereof, see our former opinion, wherein we affirmed the decision of the court below but failed to consider the motion to direct a verdict for defendant.

Briefly stated, this is a common-law action for the recovery of damages, filed and prosecuted by the plaintiff, a workman formerly employed by defendant as a logger. The defendant operated a sawmill at Silverton, and likewise employed workmen in logging camps in that vicinity. These camps were connected with defendant's sawmill by a logging railroad, and were also connected with the outside world by a wagon road and mountain trail. The plaintiff had served the defendant as a logger for three seasons prior to the accident. The camp at which he was employed during the season of 1926 is situate in the wooded mountains, about 20 miles east of Silverton. The unmarried workmen bought their meals at a cook house maintained at camp, and paid for the privilege of sleeping in the bunk house. The workmen served their employer eight hours a day, and were paid by the hour. When in the performance of their labors at the logging camp, they were under the direction and control of their

employer. At all other times, they were free from the employer's control, and not subject to the supervision of any person.

On November 6, 1926, the plaintiff, having been granted a vacation or "lay-off," left camp to go hunting. He traveled to Silverton on a "speeder." During his stay at Silverton he lived at a bording house. On November 9, he decided to return to the logging camp, his working abode, with the intention of resuming employment. He went to the depot, and, by invitation of a representative of the defendant, with others boarded a truck on the logging train. After the train had started and developed a speed of 15 or 20 miles an hour, it came to a sudden stop with a jar, the force of which threw the plaintiff to the ground. As a result, the plaintiff received serious bodily injuries, including the loss of his left arm. Upon these accidental personal injuries sustained by him when thrown from the logging truck, he predicates his cause of action. The complaint is in the usual form for such documents in personal injury cases.

The answer of defendant consists of admissions, denials and affirmative defenses. It affirmatively avers that the circuit court was without jurisdiction of the cause for the reason that the employer and the workman were under the protective provisions of the Workmen's Compensation Act. It denies negligence and affirmatively pleads plaintiff's alleged contributory negligence.

The plaintiff in his reply denies all of the new matter pleaded by the defendant.

Upon the trial of the cause both parties adduced evidence in support of their respective issues. After

each side had rested, the defendant moved for a directed verdict, on two grounds:

"(a) That the case was within the provisions of the Oregon Workmen's Compensation Act and therefore the court had no jurisdiction, and

"(b) If the court did have jurisdiction, no negligence was proved."

The court disallowed the motion, and the defendant reserved an exception to the court's ruling.

In its charge to the jury, the court instructed that the affirmative defense made by defendant involving the protection of the Workmen's Compensation Act should be disregarded. No objection was made, nor exception reserved to that holding, nor is there any assignment of error relating thereto. The defendant stands squarely and tenaciously upon its objection to the ruling of the court on its motion for a directed verdict, and bases said objection on the ground that jurisdiction of the controversy was within the Industrial Accident Commission, and not in the circuit court. The jury returned a verdict for plaintiff in the sum of $25,000.

In its motion for a directed verdict, the defendant herein specifies the grounds therefor, and in this discussion it is limited to the grounds therein set forth: 6 Ency. Pl. & Pr., 699. By this motion, it challenges the jurisdiction of the circuit court, and claims that the court erred in refusing to grant the motion for directed verdict.

A verdict rendered by the direction of the court in a case where the court is without jurisdiction is a nullity. The question of jurisdiction has been before our court in a number of cases from the early Oregon history to the present time. See *State ex rel. Mahoney*

*v. McKinnon,* 8 Or. 487; *Kesler v. Nice,* 54 Or. 585 (104 P. 2); *State v. Goodall,* 82 Or. 329 (160 P. 595). In the more recent case of *Dippold v. Cathlamet Timber Co.,* 98 Or. 183 (193 P. 909), the subject is exhaustively treated. In rendering our opinion therein we set out the following concise statement made by the Supreme Court of the United States in the case of *Defiance Water Co. v. Defiance,* 191 U. S. 184 (48 L. Ed. 140, 24 S. Ct. 63):

"The fundamental question of jurisdiction, first, of this court, and then of the court from which the record comes, presents itself on every writ of error and appeal, and must be answered by the court, whether propounded by counsel or not."

In our discussion of the question in that case we also quoted from the early case of *Evans v. Christian,* 4 Or. 375, where Mr. Justice BONHAM, speaking for the court, said:

"When a question of jurisdiction presents itself in any stage of a proceeding, and it is discovered that the court has no jurisdiction, either over the parties or the subject-matter of the cause, it is the duty of the court, on its own motion, to refuse to proceed further. Any attempt to exercise judicial functions otherwise than as authorized by law would be a nullity, and an idle waste of time."

See, also, 17 Stand. Ency. of Proced., 657; *Clyde & R. Plank Road Co. v. Parker,* 22 Barb. (N. Y.), 323.

In 7 R. C. L., § 59, "Courts," there appears the following declaration to which, for its perspicuity, we expressly direct attention:

"It is a universal principle as old as the law that the proceedings of a court without jurisdiction are a nullity and its judgment without effect either on the person or property."

And again, at section 75, the author states:

"Where judicial tribunals have no jurisdiction of the subject-matter on which they assume to act, their proceedings are absolutely void in the strictest sense of the term."

However, the court did not deny the motion because of any lack of jurisdiction over the subject-matter or the person of the litigants. The circuit court possessed original jurisdiction of the common-law action, and was empowered to hear, try, determine and render judgment upon all the issues that arose in this cause: Brown on Jurisdiction (2d Ed.), §§ 1, 2.

We now address ourselves to a consideration of the motion for a directed verdict. A motion for a directed verdict presents for decision the same question as does a motion for judgment of nonsuit: *Ridley v. Portland Taxicab Co.,* 90 Or. 529 (177 P. 429). It likewise presents the same question, in so far as it relates to the evidence, as does a demurrer to the evidence. This is true of a motion for nonsuit as well. In the case of *Carty v. McMenamin and Ward,* 108 Or. 489, 500 (216 P. 228), our court thus gives expression to the governing principle with respect thereto:

"It is the law of this state that a nonsuit will not be granted whenever there is some competent evidence produced by the plaintiff in the trial of a cause supporting each material allegation of his complaint."

In the recent case of *Johnson v. Hoffman,* 132 Or. 46 (284 P. 567), this court, speaking through Mr. Acting Justice HAMILTON, aptly stated:

"It must be premised that the law of the state of Oregon does not permit a nonsuit to be granted whenever there is some competent evidence produced by the plaintiff in the trial of a cause supporting each material allegation of his complaint. This court has frequently declared that a motion for nonsuit is in the

nature of a demurrer to the evidence, and that such motion admits not only all that the evidence proves but all that it tends to prove: *Collins v. United Brokers Co.,* 99 Or. 556 (194 P. 458); *Carty v. McMenamin & Ward,* 108 Or. 489 (216 P. 228). A motion for a directed verdict presents the same question for decision as does a motion for judgment of nonsuit.''

See the early case of *Southwell v. Beezley,* 5 Or. 458, 460, where this court laid down the rule that "a cause should be submitted to the jury, unless there is an entire lack of evidence to establish the issues on the part of the plaintiff." See, also, *Grant v. Baker,* 12 Or. 329 (7 P. 318), where it was held that, in order to take a case from the jury, "it would have to be a case where there was a total failure of proof of some material allegation of the complaint." To like effect is *Morgan's Estate,* 46 Or. 233 (77 P. 608, 78 P. 1029). In the case of *Salomon v. Cress,* 22 Or. 177 (29 P. 439), our court, in commenting upon the treatment of a motion to take a case from the jury, said:

"In passing upon this question, we only examine the record far enough to ascertain whether or not there was some evidence on each material issue. We do not assume to weigh such evidence or to determine its sufficiency, but only that there was some evidence before the jury upon which they might find a verdict if they believed the witnesses."

This court has held over and over again that, in determining a motion for nonsuit, the evidence adduced on the part of the plaintiff, together with every intendment or reasonable inference which can arise therefrom, is to be taken as the truth: *Watts v. Spokane P. & S. Ry. Co.,* 88 Or. 192 (171 P. 901). See *Herrick v. Barzee,* 96 Or. 357 (190 P. 141), where it is written:

"A motion for nonsuit is a demurrer to the evidence and admits the truth of the evidence and every

reasonable inference of fact which the jury may infer from it, and, if different conclusions can be drawn from the facts, the case should be left with the jury.''

For a collection of the Oregon cases on this subject, we direct attention to *Farrin v. State Industrial Accident Commission,* 104 Or. 452 (205 P. 984).

Throughout our discussion of this cause we have assumed that, in the reviewing of cases on appeal, this court is bound to the doctrine that only errors shown by the record to have been legally excepted to are reversible: *State v. Stone,* 111 Or. 227 (226 P. 430). In the case of *State v. Ellsworth Kelley and James Willos,* 118 Or. 397 (247 P. 146), a case where the defendants had been convicted of the crime of murder and were under sentence of death, it appeared, from a review by this court of the proceedings had in the circuit court, that no exception had been saved to certain of the court's instructions, and, in the absence of such exceptions, this court refused to consider the alleged errors. In its decision therein the court cited a number of cases, including the early case of *Kearney v. Snodgrass,* 12 Or. 311 (7 P. 309), where it was held that ''it is not error, simply, but error legally excepted to, that constitutes a ground for reversal.''

We have carefully read all the testimony in this case more than once, and from an inspection of the record we find substantial evidence in support of each and every essential allegation contained in plaintiff's complaint. The court had no right to grant a nonsuit or to direct a verdict in this cause. To remove it from the jury would have been to deny the plaintiff's constitutional right to have his cause tried by a jury.

524

Adhering, therefore, to the governing principles which underlie the cases hereinbefore discussed, it follows that the judgment appealed from should be affirmed.

CosHow, C. J., and BEAN, J., concur in this dissent.

Second petition for rehearing denied September 9, 1930

ON PETITION FOR REHEARING
(291 P. 375)

ROSSMAN, J. The petition for rehearing displays much evidence that plaintiff's counsel has again bestowed studious attention upon this case. The case is an important one not only on account of the severe injury to the plaintiff, upon which it is predicated, but also because of the consequences which attach to the solution of the difficult problem whether the plaintiff was a passenger upon the defendant's railroad, or possessed the status of an employee returning to his work. Our decision adopted the latter view, and held that his redress must come from the industrial accident fund. While we remain satisfied that our conclusion was correct, yet in appreciation of the attention which counsel for the plaintiff have again given to this cause, we shall state briefly our conclusions upon several issues which they urge in their brief.

Plaintiff insists that our decision has discarded, without justification, the common law definitions of the phrase ''an accident arising in the scope of the employment.'' It is true that we have not given those definitions controlling effect; but we have not disregarded them. The parts which immediately precede and follow the language complained of, show that in

construing the act we have adopted the practice followed generally by other courts, and previously embraced by ourselves, by declining to look to the words "an accident arising out of and in the course of the employment" alone for a statement of those injuries which are compensable.

The plaintiff urges that the phrase "within the scope of his employment" was well defined in litigation wherein a servant brought an action of common law negligence against his master and, that under the rules of statutory construction, we should apply the definition, written in those cases, to the phrase "accident arising out of and within the course of his employment." The courts, in applying the rule that an injury to be compensable must have been received while the employee was acting within the scope of his employment, experienced difficulty at times in determining the degree of proximity which must exist between the act, in the performance of which the servant was engaged at the moment of his injury, and the work which his master hired him to perform. Since the plaintiff sustained his injury while riding upon a railway car, operated by the defendant, we shall consider only the subdivision of the above common law rule which the courts applied in similar instances.

From Labatt's Master and Servant (2d Ed.), § 1555, we quote:

"A servant who, at the time of the accident in suit, was being transported on a railway car or other vehicle furnished for the purpose of facilitating the performance of his work, is deemed to have been injured in the course of his employment, and therefore can not recover if the injury was the result of risk known to and appreciated by him * * *. The inability of such employees to recover has been affirmed, both where the accident occurred while they were journey-

ing between two points at which work was to be done, and where it occurred while they were being transported from the place where they resided to the place where they worked.''

In the succeeding language Mr. Labatt points out that the law regarded the employees as under the control of his master in the above situations; the mere fact that the latter permitted the servant to sit inert, and did not demand the performance of active duty during the transportation was not deemed a negation of the right. Likewise the common law regarded the conveyance as an instrument which facilitated the performance of the work in hand like any tool or piece of machinery employed in the achievement of the desired result. But, according to Mr. Labatt, when the ''injured person was traveling entirely for his own purposes, and the right of the master to exact the performance of services was not merely dormant, but wholly suspended,'' the defense of common employment was not available because under such circumstances the employee was not engaged in the course of his employment. We shall now consider several cases which the plaintiff especially urges upon our attention. They are: *Knahtla v. Oregon Short Line, etc., R. R. Co.*, 21 Or. 136 (27 P. 91); *Simmons v. Ore. R. R. Co.*, 41 Or. 151 (69 P. 440, 1022); *Putnam v. Pacific Monthly Co.*, 68 Or. 36 (130 P. 986, 136 P. 835, 45 L. R. A. (N. S.) 338, L. R. A. 1915F, 782, Ann. Cas. 1915C, 256); *Susznik v. Alger Log. Co.*, 76 Or. 189 (147 P. 922 Ann. Cas. 1917C, 700); *Stark v. State Industrial Acc. Com.*, 103 Or. 80 (204 P. 151); *Wells v. Clark & Wilson Lbr. Co.*, 114 Or. 297 (235 P. 283); *Brady v. Ore. Lbr. Co.*, 117 Or. 188, 118 Or. 15 (243 P. 96, 245 P. 732, 45 A. L. R. 812). We reviewed some of these cases in our previous decision. We did not overlook the Susznik

case, although inadvertently we failed to mention it in our decision. The first three of the above cases were brought to recover damages resulting from alleged infractions of the common law standard of care owed by an employer; all three of those cases were determinded before the enactment of the Workmen's Compensation Act. In the Knahtla case the plaintiff was employed by the defendant as a section hand; he was being transported by it during working hours to a place where a landslide had deposited itself upon the right of way. Before that place was reached the train dropped into a ravine inflicting an injury upon the plaintiff. This court held that the plaintiff's status was that of an employee and not a passenger. In the Simmons case the plaintiff was a fireman, upon the defendant's railroad, who made his headquarters at Kamelia. He was paid by the ''run,'' receiving no compensation when not at work. Contributions previously made by him to his employer entitled him to medical attention. On the day in question he had taken a ''lay off'' so that he could visit the company's doctor at La Grande. While returning to Kamelia upon the defendant's train he was injured through its negligent operation. His transportation was provided by the defendant free of charge. The decision held that the injury did not occur in the course of his employment and that his status was that of a passenger. In the Putnam case the injury befell the deceased while she was being transported in an elevator, operated by her employer, to the fourth floor of the building occupied by it. The injury occurred at 8:20 a. m.; work did not begin until 8:30 a. m. The decision held that the injury did not occur in the course of the employment.

It will be observed that in the first case the plaintiff was subject to the commands of his employer at the

time the accident occurred; the train could have been stopped, and the men could have been ordered to work at any moment the employer chose. In the Simmons and Putnam cases the injuries occurred when the employees were not subject to the commands of their employers. When the Putnam case is compared with those cited in our previous decision, which applied the provisions of the Workmen's Compensation Act, it will be readily observed that the latter are more liberal in bringing an employee within the scope of his employment. Likewise when the language of Mr. Labatt, previously quoted, and the words of Chief Justice ROBERT S. BEAN in the Simmons case, wherein they defined the meaning of the phrase "within the scope of his employment," is compared with the language employed by Mr. Justice HENRY J. BEAN in *Stark v. State Industrial Acc. Com.,* in defining what accidental injuries are compensable under the Workmen's Compensation Act, it will be observed that the law last mentioned is much more inclusive than the former. The courts evidently believe that, since the purpose of Workmen's Compensation Acts is substantially different from an action of common law negligence, this new legislation was intended to grant relief to a larger number of persons than were affected by the common law action.

We come now to the Susznik, Stark, Wells and Brady cases, all of which construed or applied provisions of Workmen's Compensation Acts. In the Susznik case the plaintiff sought employment from an agency; he received a ticket and was directed to the office of the defendant in Portland. The latter sent him to Skamakawa, Washington, where he boarded the defendant's train and was transported to the logging camp. Immediately upon arriving at the latter place

he received the injury which constituted the subject-matter of the action. The complaint alleged that at the time of the accident the parties sustained to each other the relationship of passenger and carrier. The answer, after a series of denials, alleged that the plaintiff was an employee of the defendant at the time he received the injury, and was therefore compelled to look to the Workmen's Compensation Act of the state of Washington for indemnity. The circuit court struck this defense from the answer. The plaintiff had a judgment from which the defendant appealed. Our decision held that the circuit court erred in entering that order because the "defendant was clearly entitled to plead and prove if it could, that the relation of master and servant existed, and that, by reason of the compensation act of the state of Washington, the courts of Oregon were without jurisdiction to entertain the action.'' The decision held further that this error was harmless because, the facts failed to prove that the plaintiff was an employee of the defendant ''in the sense that he was entitled to indemnity under the compensation act of the state of Washington.'' It pointed out that the plaintiff ''had not left the immediate vicinity of the train, had not reported to the foreman, had not spoken to any one in charge, was not on the pay roll, and never did do any work or receive any compensation from the defendant.'' In the Stark case a workman, employed by one who was subject to the terms of the Workmen's Compensation Act, sustained a fatal injury while participating in a scuffle with a fellow employee. It was held that the accident arose out of and in the course of the employment. Before reaching this conclusion the decision announced the broad principles for the interpretation of the beneficiaries of the act which are reiterated in our previous decision. The Wells case was

not unlike the Susznik case. In the latter Susznik, the plaintiff, had been sent by his prospective employer to the camp; in the Wells case the injured party was sent to the camp by the employment bureau, but had not yet interviewed the prospective employer. It was held that she was an invitee and not an employee. In the Brady case the defendant had rejected the protection afforded by the Workmen's Compensation Act; that piece of legislation was therefore involved in the action only so far as it deprived the employer of defenses previously available under the common law. Brady had been employed in the defendant's camp. In the month of November snow fell at the scene of operations to such an extent that logging was suspended, "time checks for the company's employees were made out," the price of board was reduced from that which was charged when the camp was in operation to a smaller amount, and the train was dispatched to convey the men out of the camp to the main line. Due to the depth of the snow the train failed to arrive at the expected time. The camp had closed on Saturday; on Sunday the plaintiff and four others decided they would wait no longer and would make their way through the snow to a place called Dee, sixteen miles distant. Accordingly they accepted their time checks and proceeded on their way. On the journey the plaintiff sustained severe injuries by reason of becoming frost bitten. The decision held that since his employment was terminated before he left the camp his injuries did not arise out of and in the course of the employment.

The plaintiff insists that our decision is out of harmony with these seven cases. We do not believe that it is essential that we should endeavor to harmonize our holding in the present case with the first three. The Workmen's Compensation Act endeavors to cast

upon the industry the expense of the rehabilitation and relief of workmen injured during their participation in it. Its objective is more comprehensive than the principles which govern the common law action of negligence. The failure of the latter to meet the needs of modern industrial demands caused the enactment of the new legislation. We accept whatever help the old decisions supply, but do not cramp the new legislation into the old definitions. It is true that in the Susznik case one of the tests, employed in the Putnam case for the purpose of determining whether the injury occurred in the scope of the employment, was used. It produced the correct result and under similar circumstances we might use it again. But that fact does not demonstrate that the common law definition of ''the scope of employment'' is binding upon the present kind of action. Our present case can be readily harmonized with the Wells, Brady, Susznik and Stark cases. In the latter case the dependents of the deceased employee were held entitled to relief from the fund, and the broad principles of construction therein announced support our conclusions in this case. In the Susznik and Wells cases we held that the employment had not yet commenced. In neither case had any contribution been made to the industrial accident fund, nor had any one made himself liable to contribution. Compensation is paid, not as a matter of charity, but as a business enterprise. The act several times refers to the payroll of the employer, and evidently contemplates that when an employee's name is entered upon that document liability to contribute commences. Neither the name of Wells nor the name of Susznik had been entered upon the payrolls of their prospective employers. In those cases no compensation could be awarded because no one had paid for it, nor had any one made himself liable

for payment. In the Brady case the time checks were written on Saturday; on Sunday Brady accepted his check, and his injury did not occur until the following day. In our present case two important facts, not found in the Susznik and Wells cases, are present; they consist of the circumstances (1) the employment had been begun and had not terminated, (2) the Industrial Accident Commission had signified willingness to grant relief, and thereby inferentially stated that the necessary contributions to the fund had been discharged. The above being the facts we believe that our present decision does not conflict with the holdings in the Susznik, Stark, Wells and Brady cases. It is our conclusion, therefore, that when one possesses the status of an employee, and sustains an injury as a result of his participation in the industry the provisions of the Workmen's Compensation Act are applicable to his employer and to himself.

The plaintiff calls to our attention the recent decision of the supreme court of Washington announced May 27, 1930, in the case of *Hama Hama Logging Co. v. Department of Labor and Industries,* 288 P. 655. In that case one Spears, an employee of the logging company, was riding upon a speeder from the camp upon a mission of his own when an injury befell him. The speeder was provided for the accommodation of the employees of the logging company. The facts are not substantially different from those before us. The department of labor and industries, which supervises the administration of the Workmen's Compensation Act, rejected Spears' claim and he thereupon proposed to file an action for damages against the employer. The logging company appealed from the order of the department to the circuit court, which reversed the department; thereupon the appeal was taken to the

supreme court. The Washington court, in the case of *Wadnec v. Clemons Logging Co.,* 146 Wash. 469 (263 P. 592), cited in our previous decision, had held that a workman on his way to the camp was subject to the provisions of the compensation act, and in *Bristow v. Department of Labor and Industries,* 139 Wash. 247 (246 P. 573), had held that an employee injured at the plant, though not engaged in the course of his employment, was entitled to compensation. When these two cases were before the court the compensation act provided:

"Workmen means every person in this state, who is engaged in the employment of an employer coming under this act, whether by way of manual labor or otherwise, *and whether upon the premises or at the plant, or he being* in the course of his employment *away from the plant of his employer."* Rem. Comp. Stat. Wash. § 7675.

Following the two above decisions and prior to the injury sustained by Spears the act was amended by striking out the portion of the above in italics. In its amended form the act limited relief to a "workman * * * who is engaged in the employment of an employer coming under this act, whether by way of manual labor or otherwise, in the course of his employment." Laws Wash. 1927, p. 816, § 2. Under these circumstances the court was compelled to take a more constrained view of the beneficiaries of the act than we are. It held that Spears was not entitled to relief from the fund.

Plaintiff contends that we have failed to explain how the validity of this act can be sustained when the construction is placed upon it which we have assigned

to it. He relies upon the language of the Federal Supreme Court in *Cudahy Co. v. Parramore*, 263 U. S. 418, wherein the court said:

"It may be assumed that where an accident is in no manner related to the employment, an attempt to make the employer liable would be so clearly unreasonable and arbitrary as to subject it to the ban of the Constitution; but where the accident has any such relation we should be cautious about declaring a state statute creating liability against the employer invalid upon that ground."

In that case one Parramore was injured upon the public streets while on his way to work several minutes before his duty commenced. The application of the act by the courts of Utah to such a situation was held not in conflict with the constitutional limitations. We believe that the construction which we have placed upon the act is likewise in harmony with constitutional rules.

It follows that the petition for rehearing will be denied.

RAND and BELT, JJ., concur.

McBRIDE, J., absent.

———

BROWN, J. (dissenting). The plaintiff has filed a petition for rehearing. For a statement of the facts involved in this case and the law applicable thereto, see the original opinion, wherein the judgment of the lower court was affirmed and the plaintiff was awarded damages arising out of personal injuries sustained by him while a passenger, by invitation, upon a logging train of the defendant. Upon argument on rehearing, an opinion was rendered setting aside the original opin-

ion, four of the seven members of the court voting for a reversal of the former decision, and the three remaining justices dissenting.

In his opinion, written for the purpose of denying the plaintiff's petition for a rehearing, Mr. Justice ROSSMAN, after discussing the effect of the majority opinion which overruled the original opinion herein, says:

"Our decision * * * held that his (plaintiff's) redress must come from the industrial accident fund."

This holding is without merit. The plaintiff has no claim upon the industrial accident fund, nor has he filed any claim under the provisions of the Workmen's Compensation Law. See *Lough v. State Industrial Acc. Com.,* 104 Or. 313 (207 P. 354), where this court held:

"Under section 6632, subdivision 'd,' Or. L., providing that no claim for workmen's compensation shall be valid or enforceable 'unless filed within three months after the date upon which the injury occurred,' the claimant, who by the injury for which he seeks compensation was rendered mentally incapable of filing such claim until after such time had elapsed, cannot recover, as the statute, having created the right of recovery, does not merely limit the remedy, and, being general, allows of no exceptions." Syl., par. 3.

In our consideration of this petition for a rehearing, it is not proper to approach a discussion of the matter involved as advocates of a former holding, but rather is it our duty to take the question assigned under careful, deliberate, candid consideration, with the intent to comprehend and administer the law as it exists. If the result of our deliberations be at variance with our former views, it becomes our further duty

promptly and frankly to correct any errors found therein. We are here, not as lawmakers, but to administer justice as established by law.

At the argument it was urged upon us by the defendant that the case of *Wadnec v. Clemons Logging Co.*, 146 Wash. 469 (263 P. 592), was directly in point, and was, in fact, the only parallel case. The fallacy of this argument is at once apparent. As we have heretofore written, that case is not in point upon the question involved herein, for the reason that it was based upon the statute of Washington, which, so far as material here, was essentially different from our own. For a complete discussion of the Wadnec case, see the interesting case of *Hama Hama Logging Co. v. Department of Labor and Industries* (Wash.), 288 P. 655, where the distinction is drawn between the law defining the term "workman" under the workmen's compensation act of Washington as it existed at the time of Wadnec's injury and the present law of the state of Washington, which reads:

"Each workman who shall be injured in the course of his employment * * * shall receive out of the accident fund compensation in accordance with the following schedule": § 4, c. 310, p. 834, Laws of 1927.

The facts in the case of *Hama Hama Logging Co. v. Department of Labor and Industries,* supra, are stated by the Supreme Court of Washington in the following language:

"Spears was not engaged in furthering the interests of his employer at the time he received his injuries. Those injuries were sustained on an occasion when time was his own. He was making the trip from the camp on his own time and for his own personal busi-

ness or pleasure. He was not working. No one had any supervision over him. He was not receiving pay from his employer on the day he was injured.''

These facts are identical with the facts in the cause before us.

The Washington court then continues with the following observation, which, for the reason that it is so clearly applicable to the facts in the case before this court, we quote at length:

''It is argued that, had Spears lived at Eldon and had been transported daily to and from his work in the woods over his employer's railroad, there being no other way of reaching his work, such transportation would have been incident to his employment. The facts of this case do not present that question. Spears did not live at Eldon. His home, to all intents and purposes, was at the camp. Had Spears lived at Eldon and as a part of his contract of employment the logging company supplied transportation for Spears from his home to his work and back to his home each day, the rule (with which we do not disagree) enunciated in *Swanson v. Latham,* 92 Conn. 87 (101 Atl. 492), would apply. That is, where as a part of a contract of employment the employer supplies a conveyance for the transportation of the employee from his home to his work and back to his home each day, the work begins when the employee boards the conveyance and continues during the trip and during the work and on the return trip. Under such a special contract if an injury occur during the transportation, the injury occurs within the period of the employment, at a place where the employee has a right to be, and while he is doing something incidental to his employment, because contemplated by it. 'An injury received by an employee while riding, pursuant to his contract of employment, to or from his work in a conveyance furnished by his employer, is one which arises in the course of and out of the employment.' *Swanson v. Latham,* 92 Conn. 87 (101 Atl. 492, 494). The logging company merely permitted or authorized

its employees to ride on the speeder free of charge, as a convenience to the employees, and not in the furtherance of its business. This is not a case wherein the employer has agreed to transport its employees to and from their work daily as a part of its contract with them. Here the employee sustained an injury while he was not performing any duty that he owed to his employer. The employer had no control over him whatsoever. The trip on which the employee had started was one of choice and was being made for personal reasons solely. The logging company's transportation facilities afforded opportunity to the employee to enjoy periods of rest outside of the camp. The speeder was available for the convenience of the employees when off duty. Transportation thereon was free to the employees. The contribution of the means whereby the employees could frequently seek diversions outside of the camp, though deemed in the nature of compensation paid by the employer to the employee, does not constitute employment. A trip for the purpose of pleasure was not in any sense employment.

"The language of the 1927 statute is free from ambiguity. There is no reason why that language should not be literally construed, as the language is plain, the meaning unmistakable. The purpose of the amendment (§ 2, c. 310, p. 515, Laws 1927) is as clear as language can express. When the 1927 statute is read in the light of the language of the prior act and our decisions thereunder, the legislative purpose is accentuated. The legislature intended that the protection under the Workmen's Compensation Act should be restricted to employees injured in the course of their employment; that presence on the premises of the employer at the time of the injury is not alone sufficient. It follows that an employee, injured at a time when he is doing something solely for his own benefit or accommodation, and not while engaged in or furthering his employer's business, is not injured 'in the course of his employment.' "

Now note the following expression of the court in that case, and concurred in by eight of the nine justices, with reference to the majority opinion of this court in the case at issue:

"We have not overlooked *Lamm v. Silver Falls Timber Co.* (Or.), 286 P. 527, but are not inclined to follow the holding in that case for the reasons above stated."

The following Oregon cases are in point, and have never been overruled: *Simmons v. Oregon R. R. Co.*, 41 Or. 151 (69 P. 440); *Putnam v. Pacific Monthly Co.*, 68 Or. 36, 54 (130 P. 986, 136 P. 838, Ann. Cas. 1915C 256, 45 L. R. A. (N. S.) 338 L. R. A. 1915F, 782); *Susznik v. Alger Logging Co.*, 76 Or. 189 (147 P. 922, Ann. Cas. 1917C, 700); *Wells v. Clark & Wilson Lumber Co.*, 114 Or. 297 (235 P. 283); *Brady v. Oregon Lumber Co.*, 117 Or. 188 (243 P. 96, 118 Or. 15, 245 P. 732, 45 A. L. R. 812).

Joe C. Lamm, the plaintiff herein, possessed and pursued his common-law remedy. It was a legal remedy. He rightfully contends that at the time he sustained his personal injuries he was neither engaged in the furtherance of his employer's business, nor in doing something incidental thereto. He was a passenger by invitation, riding upon the defendant's logging train, and had naught to do in or about the operation of that train. The law provides the conditions under which the industrial accident fund shall be disbursed by way of compensation. When a workman as defined by statute, who is subject to the act "and in the service of an employer who is thus bound to contribute to the industrial accident fund, shall sustain a personal injury by accident arising out of and in the course of his employment caused by violent or external means,"

he shall be entitled to compensation. The record plainly shows that Lamm was hurt during his vacation period, and that the relation of employer and workman as defined by the act had been temporarily suspended during that period and had not been resumed. We believe, and courts have often observed, that, to the end that justice be established, the wholesome provisions of the Workmen's Compensation Act should be liberally construed. But we deny the right of any court to defeat a common-law action by expanding and enlarging upon the meaning of plain language by liberal construction or otherwise. That a crippled workman who possesses a legitimate claim for damages on account of injuries sustained should be thus defeated and sent out of court without a dollar is, to the writer, greatly to be regretted. Joe C. Lamm was a logger and engaged in that vocation by the defendant. However, at the time he sustained his injury, he not only was not engaged in logging, but he was ten or twenty miles distant from the woods where he performed services for the defendant when at his work.

For a further definition of the phrase "arising out of and in the course of his employment," see *Hama Hama Logging Co. v. Department of Labor and Industries* (Wash.), 288 P. 655; *Lamm v. Silver Falls Timber Co.*, supra; *Varrelman v. Flora Logging Co.*, infra p. 541.

The petition for rehearing should prevail.

Coshow, C. J., and Bean, J., concur in this dissent.