Argued January 20; reargued February 18; affirmed March 24, 1931

## COLLINS *v.* TROY LAUNDRY CO.
### (297 P. 334)

*William G. Smith,* of Portland (Collier, Collier & Bernard, of Portland, on the brief) for appellant.

*McDannell Brown,* of Portland (C. M. Idleman, of Portland, on the brief) for respondent.

CAMPBELL, J. This is an appeal from a judgment awarding damages for personal injuries. The sole question presented is: Did the injury complained of arise out of and in the course of plaintiff's employment. If it did it was a complete defense; if not, it was no defense.

The defendant is a corporation engaged in the laundry business in Portland. The laundry building, where

the plaintiff worked, is a two-story structure, extending on East Pine street from East Tenth street to East Eleventh street (200 feet), and on East Tenth street and East Eleventh street (100 feet). The numbered streets run northerly and southerly, and at right angles to Pine street. The plaintiff and many other employees worked on the second floor of the building, and their common entrance and exit was an inclosed stairway located in the northeasterly corner of the building, leading along the north wall down to Eleventh street. Immediately south of the stairway was what is termed a driveway, 12 feet wide, leading into the building. The record does not disclose the purpose of this driveway, but the sidewalk was not peculiarly a part of it; that is, that part of the sidewalk immediately in front of it was no different than the rest of the sidewalk along the premises. The defendant used many trucks in collecting and delivering laundry. These trucks were loaded and unloaded, from and to the building, over the sidewalk adjacent to the building on Eleventh street. One or more of these trucks were at this place engaged in this process almost continuously, from seven o'clock a. m. until seven o'clock p. m. Eleventh street is a public street, improved with sidewalks twelve feet wide, open to and used by the public generally. The plaintiff's work was entirely within the building, and was in no way connected with the loading or unloading of the trucks.

On the 7th day of December, 1927, the plaintiff completed her day's work at five o'clock p. m.; rang out her card, after which she went to the dressing room; changed from her working clothes into her street clothing; and then about five-thirty p. m. left the building by the usual exit. Upon reaching the sidewalk she turned south and proceeded but a short distance when

she tripped over some iron bars. These bars were about seven feet long, laid parallel to each other. One end of each bar was attached to the rear end of a truck which was standing backed to the west curbing of Eleventh street, and the other ends of the bars were rested on the sidewalk towards the building, creating an obstruction to persons walking northerly or southerly past the building. The truck belonged to the defendant, and at the time was being used in its business in connection with either receiving or discharging packages of laundry from or to the building in the customary and usual manner. The way she selected to travel was perhaps the most convenient way for her, but not by any means the only practical one.

In the pleadings there were other issues presented; the negligence of the defendant; contributory negligence of the plaintiff; assumption of risk; and the extent of injury; but these latter issues are all out of the case so far as this appeal is concerned.

At the close of the testimony, defendant moved for a directed verdict on the ground that the evidence showed that the injury complained of arose out of and in the course of plaintiff's employment. The motion was overruled and an exception taken. The court in instructing the jury gave the following instruction among others:

"There was some testimony, you remember, about the State Industrial Accident law and the necessity of presenting claims, etc., so I will instruct you that the accident upon which this action is brought was not one arising out of or in the course of the plaintiff's employment by the defendant; therefore, she would have no right to claim or receive compensation from the State Industrial Accident Commission, but her cause of action, if any, is against the defendant, Troy Laundry Company."

To this instruction an exception was taken.

At the beginning of the case there was a stipulation entered into between the counsel for the respective parties, that plaintiff and defendant were subject to what is commonly known as the Workmen's Compensation Law, Oregon Code 1930, § 49-1801 et seq., at the time of the accident. This stipulation was dictated into the record but was not carefully worded, and no doubt, there was an honest misunderstanding as to just what it meant. However, taking it as meaning that both parties were subject to the said act, do the facts show that the injury arose out of and in the course of her employment?

"If any workman while he is subject to this act and in the service of an employer who is thus bound to contribute to the industrial accident fund shall sustain a personal injury by accident arising out of and in the course of his employment caused by violent or external means, he or his beneficiaries or dependents, if the injury result in death, shall receive compensation * * *": Oregon Code 1930, § 49-1827.

"The words are used conjunctively and, therefore, both elements must coexist for neither alone is sufficient": *Blair v. State Ind. Acc. Comm.*, 133 Or. 450 (288 P. 204); *Brady v. Oregon Lumber Co.*, 117 Or. 188 (243 P. 96, 45 A. L.R. 812); *Larsen v. State Ind. Acc. Comm., ante,* p. 137 (295 P. 195).

"* * * It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure

occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence": *In Re McNicol et al.,* 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A, 306).

It would be useless to attempt an analysis of the many cases which have been decided by the courts of last resort of the different states touching the point at issue in the instant case, under the Workmen's Compensation Law. A careful analysis of them, however, shows that they all follow the general rule announced in *Cudahy Packing Co. v. Parramore,* 263 U. S. 418 (44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532), which was an action for compensation for injuries to an employee received away from the employer's premises and at a railroad crossing. In passing upon it the court said:

"Whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case. The fact that the accident happens upon a public road or at a railroad crossing, and that the danger is one to which the general public is likewise exposed, is not conclusive against the existence of such causal relationship, if the danger be one to which the employee by reason of and in connection with his employment, is subject peculiarly or to an abnormal degree. * * *

"Here the location of the plant was at a place so situated as to make the customary and practical way of immediate ingress and egress one of hazard. Parramore could not, at the point of the accident, select his way. He had no other choice than to go over the railway tracks in order to get to his work; and he was in effect invited by his employer to do so. And this he was obliged to do regularly and continuously as a necessary concomitant of his employment, resulting in a degree of exposure to the common risk beyond that to which the general public was subjected. The railroad over which the way extended was not only immediately adjacent to the plant, but by means of switches, was connected with it, and in principle it was as though upon the actual premises."

■ When plaintiff left her employer's building and reached a public street, on no business connected with her employer, she was a free agent and might choose to go hither or yon. She ceased to be a unit of her employer's force and became simply a unit of the general public. She was under no more restriction than any other member of the general public using that part of the street. She could have selected her way (*Cudahy Packing Co. v. Parramore,* supra); she could have turned north one-half a block, and proceeded either easterly or westerly on Pine street; or she could have immediately crossed the street and used the easterly sidewalk. She may not have chosen the safest way, but her choice did not in any way arise out of and in the course of her employment, nor was it peculiarly induced thereby. If she was injured by the negligence alleged in her complaint, it was a risk to which the general public was equally exposed. No part of the street was provided by her employer, but by the public, and not especially for the use of her employer's business, but for the public generally. It was a risk arising from her choice of place of residence as much

as from her employment. It was the same risk that every other member of the public who used that part of Eleventh street in going to and coming from their homes and places of employment, or for other purposes. There was no invitation, either expressed or implied, on the part of her employer, to her to use the west sidewalk of Eleventh street (*Cudahy Packing Co. v. Parramore,* supra). The way she selected was not contemplated in her contract of employment: *Lamm v. Silver Falls Timber Co.,* 133 Or. 486 (277 P. 91, 286 P. 527, 291 P. 375).

In this last case cited, there is an extensive review of the many authorities covering the subject, but they all revert to and come squarely within the principles announced by the United States Supreme Court in *Cudahy Packing Co. v. Parramore,* supra. It would serve no useful purposes to again analyze and show how the principles therein announced were applied to the different facts and circumstances of the many different cases cited.

It is sufficient to say that under the facts and circumstances of this particular case, and the principles of law applicable thereto, the injury complained of "did not arise out of and in the course of her employment." Finding no error the judgment is affirmed.

BEAN, C. J., BROWN and RAND, JJ., concur.

ROSSMAN, BELT and KELLY, JJ., dissent.

---

ROSSMAN, J., dissenting.

Believing as I do that the majority opinion errs upon an issue of importance I desire to avail myself of this opportunity of setting forth my conclusions. The error of the majority, if I am right, arises out of their misconception of the issue presented by the answer.

They believe that the answer concedes that the plaintiff sustained an injury after she had left the premises of the defendant; and that it invokes the doctrine of street risk accidents, as is illustrated by the cases reviewed in the note at 51 A. L. R. 509, so as to include her injury within the category of accidents which arise out of and in the course of the employment. To the contrary it is my opinion that the defense interposed is, that the defendant had appropriated for all practical purposes the sidewalk on East Eleventh street, adjacent to its plant, to such a large extent that it was in reality a part of the defendant's premises, and that hence the plaintiff had not left the laundry premises until her footsteps had carried her beyond this sidewalk. Before reviewing the pleadings and the evidence it may be well to ascertain whether an accident, sustained by an employee who is leaving the premises of the employer at the conclusion of the day's work by the customary route, and within a reasonable time, can be said to be one that arose out of and in the course of his employment. The authorities answer this inquiry almost unanimously in the affirmative. A case which announces, and well illustrates the application of the rule is *Matter of Lynch v. City of New York,* 242 N. Y. 115 (151 N. E. 149). The claimant was an employee of a city hospital located upon Welfare Island, which was owned by the municipality and occupied entirely by city institutions. She received her injury upon an icy sidewalk upon the island, while proceeding to a boat landing, for the purpose of leaving for the city at the close of her day's work. Her route was a customary one. We quote from the decision, written by Mr. Justice Pound:

"The rule to be applied is stated in *Matter of Kowalek v. N. Y. Cons. R. R. Co.,* 229 N. Y. 489, as follows: 'It is a general rule that if an employee is

injured on the premises of the employer in going, with reasonable dispatch and method, to or from actual performance of the specific duties of the employment by a way provided by the employer or reasonably used by the employee, compensation must be awarded. The going to and from the actual work and the risk involved in it are reasonably incidental to the employment' * * *. Although claimant was not at work when the accident happened, the employment necessarily contemplated that claimant should from time to time leave the island and return as much as it contemplated that she should work there. A reasonable interval of time for the purpose was, therefore, within the necessary scope of the employment.''

It was held that the injury arose out of and in the course of claimant's employment. A case very similar in its facts and which reached the same result is *Favorite v. Kalamazoo State Hospital,* 238 Mich. 566 (214 N. W. 229). From *Hills v. Blair,* 182 Mich. 20 (148 N. W. 243), we quote:

''* * * The employment is not limited by the exact time when the workman reached the scene of his labor and begins it, nor when he ceases, but includes a reasonable time, space, and opportunity before and after, while he is at or near his place of employment. One of the tests sometimes applied is whether the workman is still on the premises of his employer. This, while often a helpful consideration, is by no means conclusive. A workman might be on the premises of another than his employer, or in a public place, and yet be so close to the scene of his labor, within its zone, environments, and hazards, as to be in effect at the place and under the protection of the act, * * *. 'It is not a sufficient test that the workman should be on the premises of the employer, but it may be sufficient that he is in such a state of proximity as may be treated as a reasonable margin in point of space': *Hoskins v. Lancaster,* 3 B. W. C. C. 476.''

We recently held to the same effect ourselves: *Lamm v. Silver Falls Timber Co.,* 133 Or. 468 (277 P.

91, 286 P. 527, 291 P. 375), and *Varrelman v. Flora Logging Co.,* 133 Or. 541 (277 P. 97, 286 P. 541, 290 P. 751).

The recent decision of *Utah Apex Mining Co. v. Industrial Commission of Utah,* 67 Utah 537 (248 P. 490, 49 A. L. R. 415), is to like effect. The reprint of this case in the cited selective case reporter is followed with an extensive annotation reviewing numerous decisions where an injury befell an employee while entering or leaving his place of employment. The editor precedes his review with this comment: "by the great weight of authority injuries sustained by an employee while going to or from his place of work upon premises owned or controlled by his employer, are generally deemed to have arisen out of and in the course of the employment within the Workmen's Compensation Acts." The same conclusion was recently expressed in *Wabash Ry. Co. v. Industrial Commission,* 294 Ill. 119 (128 N. E. 290) ; we quote:

"The great weight of authority appears to be to the effect that if the injured employee was on the premises of the employer in going from his work, leaving within a reasonable time and following the customary or permitted route off the premises, the accident would be held to arise out of the employment. (Boyd on Workmen's Comp., § 486.) The leaving of the premises where one employed is so closely connected with his employment as to render it a necessary incident thereto. * * * Beyond question, an employee will generally be considered as being within the course of employment when he is going to or from his place of work while on the premises of the employer, if he is following the customary or permitted route in going to and from his work. It has been said that an employee must not choose a needlessly dangerous path to and from his work but that it is not necessary for him to use the path or place provided by his master;

that is, it is enough that it is customarily used for these purposes by the workmen and that its use is not specifically forbidden.''

The following language taken from *Bountiful Brick Co. v. Giles*, 276 U. S. 154 (48 S. Ct. 221, 72 L. Ed. 507, 66 A. L. R. 1402), is much quoted:

''And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance.   *   *   *''

Interesting cases applying the same principle are the following: *Indian Hill Club v. Industrial Commission*, 309 Ill. 271 (140 N. E. 871) ; *Stacy's Case*, 225 Mass. 174 (114 N. E. 206) ; *Corvi v. Stiles & Reynolds Brick Co.*, 103 Conn. 449 (130 Atl. 674), and *Brink v. Wells Lumber Co.*, 229 Mich. 35 (201 N. W. 222).

Such being the law the evidence clearly rendered erroneous the following instruction to the jury:

''I will instruct you that the accident upon which this action is brought was not one arising out of or in the course of the plaintiff's employment by the defendant; therefore, she would have no right to claim or receive compensation from the State Industrial Accident Commission, but her cause of action, if any, is against the defendant.''

Plaintiff's pleadings themselves seem to establish conclusively the fact that the Eleventh street walk

adjacent to the laundry was appropriated by the defendant as a loading platform. For instance the complaint alleged:

"The defendant in carrying on its said business, uses large baskets or hampers in transporting to and from the laundry clothes, which are brought to the said laundry on automobile trucks, and in order to convey the said large baskets or hampers from the said automobiles down to and into the said laundry, iron bars or rails are used which reach from the automobile stationed on the outside of the sidewalk down to and across the sidewalk and into the said laundry building, and that the said large baskets or hampers are skidded down on the said iron rails into the said laundry."

The answer described in much detail the manner in which the laundry trucks backed against the curbstone of the Eleventh street sidewalk and there loaded or unloaded with the assistance of hampers, baskets, skids, etc. Some of these allegations follow:

"* * * This defendant, in carrying on its said laundry business, used the sidewalk, twelve feet wide, in front of said laundry plant, for its full length on East Eleventh street, as a loading platform, over which the defendant received and dispatched and was accustomed to receive and dispatch clothing and other articles which were to be or had been laundered by it in its said plant. The articles thus laundered or to be laundered were brought to the plant in the defendant's automobile trucks and were taken over and across said walk in large baskets or hampers. These baskets or hampers were wheeled or pushed from the trucks and onto the adjacent sidewalk on aprons or metal plates about seven feet long, which ran from the bed of the truck down to the sidewalk on the East Eleventh street side of the plant. Said loading and unloading operations were carried on from the trucks of the defendant in the manner aforesaid south of the door leading from the laundry onto the street and used by the plaintiff."

The reply contained the following literal denial of these allegations: "Denies that said operations therein

alleged were carried over the entire sidewalk in front of said laundry for its full length on East Eleventh street, or were carried on at all in the vicinity of the employee's exit on said street." It is evident that the negative pregnant contained in this literal denial admitted that the sidewalk was in fact used as a loading platform: *McIntosh Livestock Co. v. Buffington,* 108 Or. 358 (217 P. 635); *White v. East Side Mill Co.,* 81 Or. 107 (155 P. 364, 158 P. 173, 527). The portions denied (that the sidewalk was not used as a loading platform for its "full length" and in the immediate vicinity of the employee's exit) were immaterial to this defense. The evidence showed, without contradiction, the following: The defendant employed thirty-two delivery vehicles and from 7 a. m. to 7 p. m. several of these cars were constantly backed up against the Eleventh street curbstone engaged in loading and unloading, with the assistance of baskets, hampers, hand trucks and drivers. One of the trucks used the iron skid rails previously mentioned. This loading equipment was freely shoved about on the sidewalk so as to facilitate operations.

Two hundred fifty women were employed in this laundry. All who worked upon the second story of the building, including the plaintiff, went to their place of employment and left again for their homes by a flight of stairs adjacent to the north wall of the building. At the bottom of the staircase was a short platform which led immediately into the Eleventh street sidewalk. Next to the staircase was a twelve-foot driveway leading through the building from Eleventh to Tenth street. Since the plaintiff lived in the southerly part of the city she daily passed through this portion of the sidewalk used by the defendant as a loading platform in going to and from her work. Thus it is evident that at least twice each day she crossed over property which

her employer had appropriated, for all practical purposes, as a part of its plant. Had the defendant set and operated upon this portion of the sidewalk one of its washing machines, a mangle, or a clothes drier, the annexation of this portion of the street by the defendant as a part of its laundry would be more obvious but no more certain. If the plaintiff in leaving the plant to return to her home had been injured by such a machine, operated upon the sidewalk, the fact that she had not yet got beyond the premises of the employer would be apparent. Surely in order to appropriate to itself the public walk, as a loading platform, it was not necessary that the laundry should construct a wall around the sidewalk and exclude all others from it. The fact that the instrumentality, which caused plaintiff's feet to stumble, was an iron rail used by the delivery department, ought not classify this case as a street accident case, when all of the other circumstances show that the rail, together with the baskets, hampers, hand trucks, loaders, etc., indicate that the sidewalk was in fact a part of the plant. The premises upon which the employee conducts his work, so far as Workmen's Compensation Acts are concerned, may include a part of a public thoroughfare immediately adjacent to the plant: *Simonson v. Knight,* 174 Minn. 491 (219 N. W. 869). We quote from *Meucci v. Gallatin Coal Co.,* 279 Pa. 184 (123 Atl. 766):

"The referee found the fight had been 'on a public road used and maintained by the defendant for the operation of its business and affairs,' and, in so holding, he was amply justified by the evidence. The word 'premises' as appearing in the compensation act, does not include all of the property owned by the employer, but does embrace that used in connection with the actual place of work where the employer carries on the business in which the employee is engaged."

In *Black v. Herman,* 297 Pa. 230 (146 Atl. 550), the same court held:

"While the term 'premises' does not include all property owned by the master, it does include so much thereof as is necessary for the conduct of the business and may even embrace a public street maintained by him."

Had the plaintiff fallen down the stairs leading to the employee's entrance doorway as she left for home, it is clear that the accident would have been deemed one that arose out of and in the course of her employment. Likewise, had she stumbled over the threshold of that doorway the accident would have been regarded as one that occurred upon the laundry premises, yet the operations of the defendant made less use of the threshold and of the staircase than it did of the Eleventh street sidewalk. When the plaintiff stepped over the threshold onto the sidewalk she had not left the laundry premises according to the theory of the defendant. Whether she turned north or south, or went east, in order to cross the street, she had many steps to take before she got away from that portion of the sidewalk which the defendant had adopted as its loading platform.

Since the answer alleged that the Eleventh street sidewalk was for all practical purposes the laundry's loading platform, and since the proof substantiated that allegation, either conclusively or with such cogency that reasonable minds could clearly draw the conclusion that the sidewalk constituted an annex to the plant, the defendant was entitled either to a directed verdict or to an instruction upon its theory of the case. Clearly the peremptory instruction depriving the defendant of its principal defense was erroneous. I, therefore, respectfully dissent from the opinion of the majority.

BELT and KELLY, JJ., concur.