Argued September 30; affirmed November 25, 1947

# KOWCUN *v.* BYBEE
### 186 P. (2d) 790

*A. S. Vosburg* (Flegel, Vosburg, Joss & Hedlund, of Portland, on brief), for appellant.

*F. S. Senn* (Senn, Recken & Recken, of Portland, on brief), for respondent.

Before ROSSMAN, Chief Justice, and LUSK, KELLY, BAILEY and HAY, Justices.

ROSSMAN, C. J.

This is an appeal by the plaintiff from a judgment of the circuit court in favor of the defendant which is based upon findings of fact and conclusions of law. The judgment dismissed the action under a holding that the only relief to which the plaintiff was entitled was the compensation provided by the Workmen's Compensation Law, § 102-1701 to and including § 102-1784,

O. C. L. A. The action was predicated upon averments of negligence and a resulting injury sustained by the plaintiff April 11, 1944, when she was struck by an automobile owned and operated by the defendant. Both the plaintiff and the defendant were employees of the Oregon Shipbuilding Corporation which was the owner or lessee of the premises upon which the purported tort occurred. The Oregon Shipbuilding Corporation, which is not a party to this action, had not rejected the Workmen's Compensation Law (§§ 102-1712 and 102-1713, O. C. L. A.,) and, therefore, its employees, including the plaintiff and the defendant, as well as the Company itself, were subject to the act (§ 102-1728, O. C. L .A.,).

The sole assignment of error follows:

"The trial court erred in holding that under the evidence of this case the plaintiff was barred from maintaining the pending action against defendant and in entering a judgment order dismissing the action."

The facts presented by the record are uncontradicted. The Oregon Shipbuilding Corporation, to which we shall refer as the Company, was engaged in the building of ships in a plant which covered 375 acres of land immediately adjacent to Portland. On the west side of the tract was the Willamette river. Bounding a portion of the east side was North Burgard Street. The plant employed 32,000 employees who worked in three shifts. The hours of the plaintiff and the defendant were 5:30 p. m. to 1:30 a. m.

The Company maintained for the convenience of its employees a parking lot, 500 by 1,000 feet in dimension, which was hard surfaced and divided by bumper rails into lanes. No charge was made to the employees

for the use of the parking lot which was a part of the 375-acre tract aforementioned. Guards in the Company's employ directed the movement of cars that entered the lot. The plaintiff sustained her injury in the parking lot when she was struck by the defendant's car. Adjoining the parking area on the west was the Company's shipbuilding yard. To the east was North Burgard Street. That thoroughfare was the only one which led to and from the plant. Thus, the parking area lay between the shipbuilding yard and North Burgard Street.

The north, south and east sides of the Company's shipbuilding yard were protected by a fence eight feet high. The west side of the yard was protected by the river. The fence and the river did not enclose the entire 375-acre tract but only the part which was devoted directly to shipbuilding purposes, that is, the shipbuilding yard. Outside of the enclosed area were the parking lot, the Administration building, Personnel building and similar facilities. The parking area, to the extent of its 500-foot side, lay directly adjacent to the east line of the shipbuilding yard. Only the fence separated the yard from the parking area. In a part of the fence which separated the parking area from the shipbuilding yard was a gate through which all employees who worked in the yard were required to enter and leave.

The plaintiff had been in the Company's employ for ten months prior to her injury. In going to and from the plant she rode in an automobile which belonged to some friends who also worked in the plant. April 10, the car in which she rode reached the employees' parking lot a few minutes before her shift began and was parked by the driver near the middle of the parking area. The plaintiff then walked through the parking

lot to the entrance gate and went to work. At 1:30 a. m., April 11, the plaintiff's shift ended and after she had passed through the gate she walked along the paved parking area toward her car. When she was within 70 feet of it she was struck by the defendant's car. The defendant had been employed in the plant for more than a year and worked on the same shift as the plaintiff. He reached his car a few moments before the plaintiff came to the spot in question and was driving his car down one of the lanes of the parking area when he ran into the plaintiff.

The foregoing facts indicate that every employee who worked in the yard and who came by automobile walked for at least a short distance in the parking area after getting out of his car in order to reach the gate. He again walked in the area when, at the conclusion of his shift, he left the gate for his automobile. Maps of the plant which constitute a part of the record indicate that since North Burgard Street did not enter the 375-acre area but skirted it on the east, all employees who came to the plant by foot, automobile or public conveyance were required to traverse at least a part of the parking area on their way to and from the entry gate.

The plainitff has received no compensation from the Industrial Accident Commission for her injury. She swore that when she went to the Company's plant for the purpose of filing a claim for compensation someone told her that no compensation was payable. At any rate, she filed no claim.

The foregoing will suffice as a statement of the facts.

Based upon averments that the defendant drove his car in a negligent manner, the plaintiff instituted this action. The answer, in addition to denying negligence,

averred that (1) the Oregon Shipbuilding Corporation subscribed to the Workmen's Compensation Law; (2) the plaintiff's injury arose out of and in the course of her employment; and (3) the plaintiff's sole remedy was under the Workmen's Compensation Law.

Section 102-1752, O. C. L. A., says:

"Every workman subject to this act while employed by an employer subject to this act who, while so employed, sustains personal injury by accident arising out of and in the course of his employment and resulting in his disability, * * * shall be entitled to receive from the industrial accident fund thereby created the sum or sums hereinafter specified and the right to receive such sum or sums shall be in lieu of all claims against his employer on account of such injury or death, except as hereinafter specifically provided. If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, or if death result from the injury, his widow, * * * may elect to seek a remedy against such third person; provided, however, that no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to this act. * * * * "

Section 102-1754, O. C. L. A., provides:

"If any workman while he is subject to this act and in the service of an employer who is thus bound to contribute to the industrial accident fund shall sustain a personal injury by accident arising out of and in the course of his employment caused by violent or external means, he or * * * shall receive compensation as hereinafter provided."

The above are pertinent parts of the Workmen's Compensation Law which determine whether the plain-

tiff was entitled to maintain her action or was required to look to the industrial accident fund for compensation.

The defendant, who, as we have seen, argues that the plaintiff's sole remedy is against the Industrial Accident Commission, was not an employer; to the contrary, he, as well as the plaintiff, was a workman within the meaning of § 102-1703, O. C. L. A. Both were employed by the Oregon Shipbuilding Corporation which had embraced the Workmen's Compensation Law. We are, therefore, confronted with the problem as to whether or not a workman, upon being sued for the consequences of a negligent act which injured a fellow workman, is afforded a defense by the Workmen's Compensation Law and can demand that his coemployee look solely to the industrial accident fund. Going hand in hand with that problem is the additional one: Was the plaintiff entitled to compensation from the industrial accident fund for the injury which befell her. Concerning the latter issue, § 102-1752 says:

"Every workman subject to this act while employed by an employer subject to this act, who, while so employed, sustains personal injury by accident arising out of and in the course of his employment and resulting in his disability, * * * shall be entitled to receive from the industrial accident fund * * * the sum * * * ."

If the facts aforementioned warrant a finding that the plaintiff's injury was sustained while she was employed by the Oregon Shipbuilding Corporation, and a further finding that the accident arose out of and in the course of her employment, the plaintiff was entitled to receive compensation for her injury out of the industrial accident fund.

*Cudahy Packing Co. v. Parramore*, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532, and *Lamm v.*

*Silver Falls Timber Co.,* 133 Or. 468, 277 P. 91, 286 P. 527, 291 P. 375, bestowed careful attention upon the problem just mentioned. Both of those decisions were rendered while the construction of workmen's compensation laws was in the formative stage. In the Parramore case the workman was injured about seven minutes before his hours of labor began and some distance from the plant where he worked. The injury occurred upon a public thoroughfare which was the only practical means of reaching the plant. The thoroughfare was rendered dangerous by railway tracks. In the Lamm case the workman's injury was incurred the day before he was to resume his labors and occurred upon a logging railroad which constituted the sole practical means of going to and from his place of employment. Both decisions held that the injury arose out of and in the course of the workman's employment. Each has been cited many times and always with concurrence in the views announced. In *Murphy v. Miettinen,* 317 Mass. 633, 59 N. E. 2d, 252, and *Pantolo v. Lane,* 185 Misc. 221, 56 N. Y. S. 2d 227, the facts presented remarkable parallels to those now before us, with the exception that in each of those cases the employee was preparing to go to work rather than quitting when the alleged negligent act occurred. In holding that the injury arose out of and in the course of the workman's employment, the Murphy decision says:

> "He was on the premises of his employer, engaged in an act contemplated by his employment, and was about to go to another part of the premises where his work was to be done. This was an incident of his employment. It is of no consequence that he was not inside a building. * * * The protection of the act is not denied to employees who work inside merely because they are outdoors. That he was one half hour early was not unreasonable.

'While on the master's premises, a servant may be within his employment although he has not begun work or has stopped work.' * * * "

Horovitz, in his recent valuable volume entitled Current Trends in Workmen's Compensation, at page 673, says:

"The current trend is to protect employees using parking lots, employer-owned, controlled, or designated by the employer as proper for use, where such parking is permitted by the employer, even without a contractual basis. Permissive use makes injuries thereon reasonably incidental to the employment; and the fact that the injury occurs a reasonable period before or after working hours does not militate against the holding that the injury occurred 'in the course of' the employment."

We think that the Lamm decision correctly interpreted the meaning of the terms "employed" and "arising out of and in the course of his employment."

We do not believe that the whistle which calls the men to work in the morning and later signals the end of the day's labors always determines whether or not an injury which befell a workman arose "out of and in the course of his employment." Likewise, we do not believe that the Workmen's Compensation Law selects the threshold of the factory as the dividing line which decides whether or not an injury happened "out of and in the course of" an employment. In construing the phrase "out of and in the course of his employment," the courts consider the nature, conditions, obligations and incidents of the employment: *Caswell's Case*, 305 Mass. 500, 26 N. E. 2d 328. If they find a causal connection between the employment and the injury, the requirements of the phrase have been met: *Cudahy Packing Co. v. Parramore*, supra; *Lamm v. Silver Falls*

*Timber Co.,* supra; and *Larsen v. State Industrial Accident Commission,* 135 Or. 137, 295 P. 195.

In the present instance, the injury occurred upon the premises of the employer. The plaintiff was rightfully in the parking lot, and at the time of her injury was engaged in walking to the car which would take her home. Her employer contemplated that she should pursue that course of conduct. All of the Company's employees who, like the plaintiff, worked inside the fenced area were required to walk some distance in the parking lot in order to reach their parked automobiles or Burgard Street which led from the plant. Since the close of one shift was simultaneous with the beginning of another, numerous cars moved about the parking lot when the change occurred. We are satisfied that the injury which befell the plaintiff was incidental to her employment. There existed between her employment and her injury a direct causal connection. Had she not been an employee she would not have been injured. That fact is not conclusive, but there are the several additional facts which we have mentioned.

We shall not pause to analyze *Collins v. Troy Laundry Company,* 135 Or. 580, 297 P. 334, upon which the plaintiff relies. The injury which was the subject matter of that case occurred upon a public sidewalk. Three members of this court dissented from that opinion. We believe that previous paragraphs of this decision sufficiently set forth the controlling principles of law.

■ We conclude that, had the plaintiff sought it, she would have been awarded compensation from the industrial accident fund for her injury.

We come now to the problem as to whether the defendant, who was a workman, not an employer, may

shield himself from liability for his alleged tort by invoking the Workmen's Compensation Law. Section 102-1752, in words which we have already quoted, says that compensation paid to an injured workman, whose employer subscribed to the act, is "in lieu of all claims against his employer on account of such injury * * *." The act contains no provision composed of words of like specific character discharging from liability a fellow workman whose negligence may have been the cause of the injury. Before the act was adopted the fellow servant rule rendered an employer nonliable for an injury inflicted upon an employee through the negligence of a fellow employee, but every employee was liable to his fellow workmen for his own misfeasance. Section 102-1752 also says:

> "If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, * * * may elect to seek a remedy against such third person; * * *."

If those words mean that for an injury inflicted upon a workman by a third person "in the same employ" no election may be made to sue the third person, and the injured workman must be content with the compensation awarded him by the Industrial Accident Commission, this action cannot be maintained.

There are several scores of decisions rendered by the courts of various jurisdictions upon the question of whether or not a workman, who negligently injures a fellow workman, is rendered immune from liability by the Workmen's Compensation Law which his employer had embraced. The difference in the results is not due to a difference in judicial interpretation of like statutes, but to the fact that the provisions

of the statutes bearing upon this issue vary. A review of all the decisions would greatly prolong this decision.

One of the decisions which held that an employee may maintain an action against a coemployee, based upon charges of negligence, is *Botthof v. Fenske,* 280 Ill. App. 362. A section of the Illinois act said:

"No common law * * * right * * * to recover damages for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, shall be available to any employee who is covered by the provisions of this Act, * * *."

The court found that the provision "is broad enough to abolish the common law right to recover damages against any person for an injury sustained by an employee in the line of his duty," but held that the clause, when "interpreted in the light of the subject matter in connection with which it is used," applied only to the right of an employee against his employer. The court then quoted a section which was applicable to injuries "not proximately caused by the negligence of the employer or his employees, and was caused under circumstances creating a legal liability for damages on the part of some person other than the employer to pay damages, such other person having elected not to be bound by this Act." The provision went on to say that if the tortious third person "other than the employer" had elected "not to be bound by this Act," the injured workman could maintain an action against the tort feasor, even though he had received compensation under this act; he was, however, required to reimburse his employer out of the recovery for the compensation received from him. The court attached controlling importance to the words "bound by this

Act'' and held that they referred to someone who had agreed to pay compensation, that is, to employers. Since the defendant, who was an employee, had not agreed to pay compensation to anyone, the court held that the act gave him no defense.

*Zimmer v. Casey*, 296 Pa. 529, 146 Atl. 130, in analyzing the Workmen's Compensation Law of Pennsylvania, said:

"Coemployees, in their interemployee relation, occupy as to each other the status of independent contractors. They owe the common law duty of due care in the discharge of their duties. Each has a separate contract of employment, though each is paid by the same master. As to the master they may be fellow servants, but as to each other they are not servants. Their relation is separate and independent and if one is injured by the other, the injured servant may bring an action for damages against the injuring servant.

"Does the Compensation Act make a change in this relation or prevent recovery? * * * The difficulty in the present case arises from a failure to recognize the Workmen's Compensation Act as an instrument intended to effectuate certain purposes in derogation of the common law, where the latter had been found inadequate to accomplish that purpose. As it is in derogation of the common law, it must receive a strict construction, * * *. The act does not affect the existing common law right to sue the wrongdoer, unless that wrongdoer is the master. * * *

"The difficulty with appellee's position lies in assuming that so-called third parties are only the persons designated by the act as such and a co-servant is not a statutory third person. The act makes no attempt to define 'third person,' and makes no reference to the subject that would disturb the common law conception of third persons or the liability of coemployees to each other for

negligent act. The act may be searched from beginning to end and not a single line will be found dealing with or disturbing the common law relation between coemployees, * * *.''

The decision held that the Workmen's Compensation Act did not destroy the right of one employee to sue another for misfeasance and that, therefore, the plaintiff's action could be maintained.

Wisconsin holds that an employee may maintain an action against a coemployee: *McGonigle v. Gryphan,* 201 Wis. 269, 229 N. W. 81. The Workmen's Compensation Act of that state provides:

"The making of a claim for compensation against an employer or compensative insurer for the injury or death of an employe shall not affect the right of the employe or his personal representative to make claim or maintain an action in tort against any other party for such injury or death, but the employer or his insurer shall be entitled to reasonable notice and opportunity to join in such action. If they or either of them join in such action, they shall be entitled to repayment of the amount paid by them as compensation as a first claim upon the net proceeds of such action * * *.

"(b) The commencement of an action by an employee or his dependents against a third party for damages by reason of an injury to which this chapter is applicable, or the adjustment of any such claim, shall not affect the right of the injured employe or his dependents to recover compensation, * * *.'' (Wis. Statutes, 1931, § 102.29).

The court said:

"The phrase 'third person' is used in similar statues in the Workmen's Compensation Acts of other states. So far as we have been able to find, this phrase has always been construed to include all who do not occupy the relationship of employer

and employe. Zimmer v. Casey, 296 Pa. 529, 536-7, 146 Atl. 130,  *  *  *.''

It will be observed that both the Pennsylvania and the Wisconsin statutes employ the term "third person" and that the courts held that in an action by an employee against another employee the latter is deemed a "third person" within the statute's contemplation. The Pennsylvania court, in the above quotation which we took from the Zimmer decision, said that the act "makes no attempt to define 'third person.' '' Our act uses the term "third person" in the following manner: "a third person not in the same employ."

Without reviewing the other decisions which hold that an employee may sue a coemployee, we shall now turn to some which took the opposite point of view.

In *Landrum v. Middaugh,* 117 Ohio St. 608, 160 N. E. 691, the plaintiff, Middaugh, was injured through the purported negligence of the defendant who was a foreman and overseer in the plant in which both he and the plaintiff worked. The plaintiff, before suing the defendant, had sought and received compensation from the Ohio Industrial Commission. The decision, in holding that the action could not be maintained, cited no specific section of the Ohio Workmen's Compensation Act. We now quote from the decision:

> "If there had been no compensation law, Middaugh could have sued either the Rush Creek Clay Company or Landrum; but he would have been required to elect which one to sue.  *  *  *
>
> "It has been held, under specific statutory enactments giving injured employees a right of action for damages against third persons whose negligence causes the injury, that a negligent employee is such a third person and is liable, irrespective of the right of compensation from the employer under the

statute. Churchill v. Stephens, 91 N. J. L. 195, 102 A. 657; Lees v. Dunkerly Bros., 103 L. T. Reports, N. S. (England) 467. The words 'some person other than the employer,' under a similar statute, have been recently held, in Webster v. Stewart, 210 Mich. 13, 177 N. W. 230, to include the vice president of the employer corporation. However, since this state has no statute upon the question, we are remitted to deciding the case upon the general principles of law. \* \* \*

"Is the foreman, however, so merged with the employer, when acting within the scope of his employment, that the immunity of the employer from liability under the Workmen's Compensation Act also renders the foreman immune? \* \* \*

"Hence we hold that the act of Landrum, as set forth in the petition, being in the regular course of the employment and not being alleged to be willful, wanton or malicious, was the act of the employer, and that Landrum cannot be held liable after application for and acceptance by defendant in error of compensation under the act."

In *Rosenberger v. L'Archer,* (Ohio App.), 31 N. E. 2d 700 (1936), the plaintiff and the defendant were coemployees. Their employer had embraced the Ohio Workmen's Compensation Act. The complaint charged that the plaintiff was injured through wanton negligence of the defendant. In holding that the action could not be maintained, the court quoted a provision of the Ohio Constitution which provided:

"Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease."

The plaintiff had previously applied for and had been awarded compensation under the Ohio Workmen's Compensation Act. The court said:

> "It is clear that the plaintiff would have no cause of action against her employer. It is protected against liability by the constitutional provision."

Then, in holding that the constitutional provisions also protected the defendant employee, whom the plaintiff sought to hold liable, the court declared:

> "The constitutional mantle that shields the employer also protects the agency or instrumentality through which the employer acts. This is necessary to give effect to the constitutional purpose."

In *Peet v. Mills,* 76 Wash. 437, 136 P. 685, L. R. A. 1916A, 358, Ann. Cas. 1915D 154, the plaintiff, a motorman upon an interurban railway, was injured in a collision of his train with another. The plaintiff conceded that he was a workman within the meaning of the Washington Workmen's Compensation Act and that the act took away from him his cause of action against his employer. He, however, instituted action against the president of the railway company, charging that official with negligent failure to operate the block signal system with which the railway was equipped. In holding that the action could not be maintained, the court quoted a provision of the Washington Workmen's Compensation Act, which provided:

> "All phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extra hazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; and to that end all civil actions and civil causes of

action for such personal injuries and all jurisdiction of the courts of the state over such cases are hereby abolished.''

The court ruled:

"We are of the opinion that the compensation provided by the act in case of injury to any workman in any hazardous occupation was intended to be exclusive of every other remedy, and that all causes of action theretofore existing except as they are saved by the provisos of the act are done away with.''

In *Bresnahan v. Barre*, 286 Mass. 593, 190 N. E. 815, the common employer of the plaintiff's intestate and the defendant were subject to the Massachusetts Workmen's Compensation Act. The plaintiff's intestate lost his life as the result of the defendant's negligence which took place while the two were discharging their duties. The plaintiff received an award under the Workmen's Compensation Act and thereupon this action was continued for the benefit of the insurer under a Massachusetts statute reading as follows:

"Where the injury for which compensation is payable was caused under circumstances creating a legal liability in some person other than the insured to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages or against the insurer for compensation under this chapter, but not against both. If compensation be paid under this chapter, the insurer may enforce, in the name of the employee or in its own name and for its own benefit, the liability of such other person; and in case the insurer recovers a sum greater than that paid by it to the employee, four fifths of the excess shall be paid to the employee.'' (G. L. Ter. Ed. c. 152, § 15).

We now quote from the decision:

> "The plaintiff's intestate was injured by the tort of the defendant committed while each was acting within the scope of his employment by the common employer. The employer was required by accepting the Workmen's Compensation Act to protect the plaintiff's intestate from the consequences of such conduct by the defendant. It was then an incident to the employment of both the plaintiff's intestate and the defendant that there should be protection against such injury by the insurance of the employer under the Workmen's Compensation Act. * * *
>
> "One purpose of the Workmen's Compensation Act was to sweep within its provisions all claims for compensation flowing from personal injuries arising out of and in the course of employment by a common employer insured under the act, and not to preserve for the benefit of the insurer or of the insurer and those injured liabilities between those engaged in the common employment which but for the act would exist at common law. That is the broad ground underlying the decisions already cited. It is equally applicable to the case at bar. An individual employee stands on the same footing with respect to such liability as a contractor or subcontractor."

The judgment which the lower court had entered for the defendant was affirmed.

In *Caira v. Caira,* 296 Mass. 448, 6 N. E. 2d 431, the plaintiff was injured through the negligence of the defendant, his coemployee, while both were engaged in the duties of their employment. The plaintiff brought the action, not for the benefit of the insurer, but for his own benefit. The court, in holding that the action could not be maintained, relied upon *Bresnahan v. Barre,* supra, and said that the rule announced in that case "cannot be restricted to cases

in which the action against the fellow employee is brought by an insurer."

In a preceding paragraph we said that the facts in *Murphy v. Miettinen,* 317 Mass. 633, 59 N. E. 2d 252, presented a remarkable parallel to the facts before us. The decision says:

"If at the time the injuries were received the parties were engaged in the course of their common employment, the plaintiff cannot maintain this action but must rely upon his remedies under the workmen's compensation act."

The court found that the parties, who were coemployees of an employer who was subject to the Massachusetts Compensation Act, were engaged within the scope of their employment when the defendant committed his negligent act and that, therefore, the action could not be maintained.

The above review of decisions could be prolonged to considerable length, for we have by no means exhausted the available decisions, but we have gone far enough to show that each court, in construing the local workmen's compensation law, was controlled by the phraseology of the act, modified possibly by the state's conception of the employer-employee relationship.

We now revert to the controlling words of our own act which are, "a third person not in the same employ." We saw from the Pennsylvania and the Wisconsin decisions that an employee is normally deemed a third person when sued by a coemployee. The New York Workmen's Compensation Law employs the term "in the same employ." Subdivision 6 of § 29 of the Workmen's Compensation Law of New York

(64 McKinney's Consol. Laws of New York, Ann., p. 115) says:

"The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee, or in case of death his dependents, when such employee is injured or killed by the negligence or wrong of another in the same employ."

In *Pantolo v. Lane* the plaintiff and the defendant were coemployees of the Endicott-Johnson Corporation which maintained a parking lot for the convenience of its employees. We now quote from the decision:

"The plaintiff alleges that he was injured through the negligence of the defendant, a co-employee of Endicott-Johnson Corporation. The accident took place on the parking lot which the company maintains for its employees while they were both arriving for work. The defendant was operating his automobile and the plaintiff was on foot. It now seems to be definitely established that Subdivision 6 of Section 29, Workmen's Compensation Law, is a bar to an action by an employee against his coemployee for damages resulting from the coemployee's negligence. Abbondondolo v. Mealing, 249 App. Div. 818, 292 N. Y. S. 326; Behan v. Maleady, 249 App. Div. 912, 292 N. Y. S. 540; Puccio v. Carr, 177 Misc. 706, 31 N. Y. S. 2d 805, affirmed 263 App. Div. 1042, 33 N. Y. S. 2d 684; Caulfield v. Elmhurst Contracting Co., 268 App. Div. 661, 665, 53 N. Y. S. 2d 25, 29."

The court held that both plaintiff and defendant were acting within the scope of their employment when the accident occurred and that, therefore, compensation was the exclusive remedy. Before the pronouncement in the Pantolo case the New York courts had held at least a score of times that coemployees are "in the same employ." The Pantolo decision merely added one more to the list.

Section 7675, Remington's Rev. Statutes of Washington, includes the phrase, "negligence or wrong of another not in the same employ." The expression has been given its ordinary meaning: *Reeder v. Crewes,* 199 Wash. 40, 90 P. 2d 267; *Denning v. Quist,* 160 Wash. 681, 296 P. 145; and *Robinson v. McHugh,* 158 Wash. 157, 291 P. 330.

It seems evident that by adding the phrase, "not in the same employ" after the term, "a third person," our legislature sought to avoid the effect of the Pennsylvania and the Wisconsin decisions. It will be recalled, however, that the New York statute says that the injured workman's right to compensation shall be his "exclusive remedy" if he is injured "by the negligence or wrong of another in the same employ." Our act does not employ the term, "exclusive remedy." We think, however, that our practice has constantly deemed the remedy afforded by our act as the exclusive remedy available to the injured workman except in the instances where the act affords an alternative remedy. We shall review one or two illustrative decisions.

In *McDonough v. National Hospital Association,* 134 Or. 451, 294 P. 351, the plaintiff and his employer, the Flora Logging Company, were subject to the Workmen's Compensation Law. The employer had entered into a contract with the National Hospital Association, one of the two defendants, whereby the Association was bound to furnish the employees of the logging company, when injured, medical and hospital services. The plaintiff, while pursuing his labors was injured, and, pursuant to an application made by him, received an award of compensation from the Industrial Accident Commission. After his injury the plaintiff re-

ceived medical treatment by Dr. C. S. Sabin, one of the two defendants, whose services were engaged for that purpose by the other defendant, National Hospital Association. The action under review was predicated upon charges that the two defendants negligently treated the plaintiff, with the result that one of his feet was permanently deformed. This court, in sustaining a judgment upon the pleadings which the circuit court had entered in favor of the defendants, said:

> "When these various provisions of the Workmen's Compensation Act are considered together and the effect which it is obvious the legislature intended them to have is given, it seems to be very clear that the commission, during the time it has jurisdiction over the matter, is required to award compensation to an injured workman coming within the terms of the act not only for the original injury but also for any subsequent injury he may sustain due to the malpractice or negligence of the physician while being treated for the injury first sustained, and that once having received and accepted compensation for the combined injuries, he cannot maintain an action against the physician for malpractice. If an action in such case could be maintained, it would result in two recoveries for the same damage. This conclusion, we think, is sustained not only by the plain provisions of the act itself but also by the applicable provisions of the common law and by the adjudicated cases in other jurisdictions where the statutes contain provisions somewhat similar to our own."

*Williams v. Dale,* 139 Or. 105, 8 P. 2d 578, 82 A. L. R. .922, reached the same result as the McDonough case. In it, as in the McDonough case, the plaintiff was at the time of his injury in the employ of an employer who was subject to our Workmen's Compensation Law. He had sought and received an award from the Industrial

Accident Commission. He claimed that the physicians who treated him under employment of his employer were guilty of negligence. For the purported result of their alleged negligence the plaintiff instituted the action now under review. This court held that the award which was made to the plaintiff from the industrial accident fund was full compensation to him for all his injuries including the aggravation resulting from the physician's purported lack of skill. The decision said:

> "In accordance with the general rule, when a plaintiff has accepted satisfaction in full for an injury done him from whatever source it may come, he is so far affected in equity and good conscience that the law will not permit him to recover again for the same damages."

In *Matheny v. Edwards Ice Machine & Supply Company*, 39 Fed. 2d 70, it appeared that the plaintiff, an employee of the Medford Ice & Storage Company, while engaged in the performance of his duties in the plant of his employer, was injured by the purported negligence of an employee of the defendant corporation which was installing refrigerator pipes in the plant. Both concerns had embraced the Workmen's Compensation Act, and the plaintiff, before commencing his action, had filed a claim with the Industrial Accident Commission together with a notice that he elected "to seek remedy against a third party." The decision quoted the following part of our act:

> " * * * and the right to receive such sum or sums shall be in lieu of all claims against his employer on account of such injury * * * except as hereinafter specially provided; provided, however, that if the injury to a workman occurring away from the plant of his employer is due to the negligence or wrong of another not in the same employ,

> the injured workman \* \* \* shall elect whether to take under this act or seek a remedy against such other \* \* \*."

The plaintiff argued that since his injury did not occur away from the plant of his employer, he, therefore, was not confronted with the consequences attendant upon the alternative mentioned in the words just quoted and was at liberty to hold the defendant liable for the negligence of its employee. In rejecting the contention, the decision stated its effect as follows:

> "And in that view it follows that, in whatever order he may elect to proceed, he may assert the right twice to receive full compensation, once from the accident fund and once from the defendant, and this notwithstanding the fact that in part the burden of creating and maintaining that fund falls upon the defendant."

The court held:

> "When we consider the purpose of the act and the evils to be corrected, and particularly the implications of the excepting proviso, we are persuaded that when, as here, the accident occurred in the plant where all parties concerned are in a sense in a single employ, it was intended that the right to compensation under the act should be in lieu of all other remedies against any of the parties so engaged."

■ We think that we have gone far enough to show that when the Workmen's Compensation Law of this state entitles an injured workman to compensation, the latter is the measure of his recovery. The Commission's award is intended to be full and complete. It covers all consequences of his injury, such as aggravation. Had the plaintiff filed an application with the Commission for compensation, she would have received an award.

An injured workman cannot have both an award of compensation and an action for damages against a purported tort feasor except in the specific instances mentioned in the act. In all cases, except the rare exceptions set forth in the act, compensation, and that alone, is the measure of recovery. Compensation, unless an injured workman can bring himself within an exception, is the exclusive remedy. In the case at bar, the plaintiff cannot bring herself within the clause we have been construing because it is applicable only "to the negligence or wrong of a third person not in the same employ."

The judgment of the circuit court is affirmed.